(No. 17363.—Judgment reversed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ARTHUR DAY *et al.* Plaintiffs in Error.

*Opinion filed June 16, 1926.*

1. STATUTES—*intention of legislature when act was passed must be ascertained and given effect.* In construing a statute the intention of the legislature, in the light of conditions and the state of the law when the act was passed, must be ascertained and given effect, if possible.

2. SAME—*what should be considered in construing a statute.* In construing a statute the intent of the legislaure should be ascertained by the. history of the legislation on the subject and by comparing statutes relating to the same subject, passed at the same or different sessions of the legislature, as well as statutes upon cognate subjects, though not strictly *in pari materia.*

3. SAME—*a statute will be so construed as to avoid absurd results.* Where two constructions may be placed upon a statute, and according to one of them the enactment would be absurd, if not mischievous, while the other renders the act reasonable, the construction leading to the absurd result will be avoided, and if a literal interpretation of words leads to an unreasonable or absurd result, some other meaning within the reasonable scope of the words may be adopted to avoid such result.

4. CRIMINAL LAW—*when child absents itself from home within meaning of section 1 of act of 1915 defining delinquent child.* Section 1 of the act of 1915 to punish contributing to the delinquency of children, in defining a delinquent child as one who, under the specified age, "absents itself from its home or place of abode," means a going away from the home with the intention of not returning to it or an abandonment of the home, as any other construction would lead to absurd results, and it is manifest the legislature intended that the words be given the same meaning as in the Juvenile Court act.

5. SAME—*when defendants cannot be convicted of contributing to delinquency of child.* Defendants charged with contributing to the delinquency of a child by persuading her "to then and there absent herself from her home then and there without just cause and without then and there having the consent" of her parents, can not be convicted where the evidence shows that they persuaded the child to leave home for one night, only, and no intention is shown

on the part of any of the parties concerned that she should abandon her home, and this being the only charge in the indictment, the question whether the defendants would be guilty under any other charge cannot be considered.

THOMPSON, J., dissenting.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on writ of error to the Circuit Court of Macon county; the Hon. JAMES S. BALDWIN, Judge, presiding.

JOHN E. HOGAN, MICHAEL FITZGERALD, WILLIAM K. WHITFIELD, JESSE L. DECK, and W. THOMAS COLEMAN, for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, CHARLES F. EVANS, State's Attorney, and MERRILL F. WEHMHOFF, for the People.

Mr. JUSTICE HEARD delivered the opinion of the court:

Plaintiffs in error were indicted, tried, convicted and sentenced by the circuit court of Macon county. Upon writ of error the Appellate Court for the Third District affirmed the judgment of the circuit court, and the record is now before this court upon writ of error.

The indictment contained three counts. The first count was quashed. The second count charged that "Arthur Day and E. William Hight knowingly, willfully and unlawfully did then and there encourage one Lois Harris, then and there a female child, and then and there under the age of eighteen years, to-wit, of the age then and there of sixteen years, to then and there become a delinquent child by then and there persuading her, the said Lois Harris, to then and there absent herself from her home then and there without just cause and without then and there having the consent of Oscar L. Harris and Marie Harris, the said Oscar L. Harris and Marie Harris being then and there the parents

of the said Lois Harris." The third count is practically the same as the second count, the main difference being the use of the word "encouraging" instead of the word "persuading."

It is contended by plaintiffs in error that the evidence in the case does not show that they were, either of them, guilty under either of these counts. To sustain a verdict of guilty against the defendants, or either of them, under this indictment, the evidence must show, beyond a reasonable doubt, that such defendant or defendants were guilty of the specific crime charged in the indictment. Proof of no other crime, no matter how great its moral turpitude, will suffice if the specific crime charged be not proven. One of the material facts necessary to be proven in this case to warrant a conviction of the defendants was that such defendants either persuaded or encouraged Lois Harris to absent herself from her home without just cause and without having the consent of her parents.

On the 25th of August, 1923, Lois Harris, sixteen years of age, residing with her parents in the city of Decatur, in Macon county, about eight o'clock that evening left Decatur with plaintiffs in error and an adult female companion and went to Danville, in Vermilion county, and returned to Decatur about eight o'clock the next evening. The evidence shows that she took this trip without just cause and without the consent of either of her parents, and the evidence tends to show that the defendant Day persuaded or encouraged her to go without such consent.

The vital question in this case is the meaning of the word "absent," as the same is found in this indictment. The indictment in this case was drawn under section 2 of "An act to define and punish the crime of contributing to the delinquency of children," approved June 25, 1915. (Laws of 1915, p. 369.) Section 1 of that act defines a delinquent child as follows: "That for the purposes of this act a delinquent child is any male who while under

the age of seventeen (17) years, or any female who while
under the age of eighteen (18) years violates any law of
this State; or is incorrigible, or knowingly associates with
thieves, vicious or immoral persons; or without just cause
and without the consent of its parents, guardian or cus-
todian absents itself from its home or place of abode, or is
growing up in idleness or crime; or knowingly frequents
a house of ill-repute; or knowingly frequents any policy
shop or place where any gambling device is operated; or
frequents any saloon or dram-shop where intoxicating liq-
uors are sold; or patronizes or visits any public pool-room
or bucket-shop; or wanders about the streets in the night
time without being on any lawful business or lawful occu-
pation; or habitually wanders about any railroad yards or
tracks or jumps or attempts to jump onto any moving train;
or enters any car or engine without lawful authority; or
uses vile, obscene, vulgar, profane or indecent language in
any public place."·

It is a primary rule in ascertaining the construction to
be placed upon a statute, that the intention of the legislature
should be ascertained and given effect. (*People* v. *Price,*
257 Ill. 587.) What the framers of a statute would have
done had it been in their minds that a case like the one here
under consideration would arise is not the point to be con-
sidered. The inquiry is what, in fact, they did enact, prob-
ably without anticipating the existence of such facts. The
endeavor should be made always, in construing one or more
statutes, to ascertain by the history of the legislation on
the subject the purpose and intent of the legislation, and
to that end it is not only proper to compare statutes relat-
ing to the same subject passed at the same or different ses-
sions of the legislature, but to consider statutes upon cog-
nate subjects though not strictly *in pari materia.* (*Chicago,
Burlington and Quincy Railroad Co.* v. *Doyle,* 258 Ill. 624;
*People* v. *Barnett,* 319 id. 403.) The true rule is that stat-
utes are to be construed as they were intended to be under-

stood when they were passed. Statutes are to be read in the light of attendant conditions and the state of the law existent at the time of their enactment. The words of a statute must be taken in the sense in which they were understood at the time the statute was enacted. (*People* v. *Barnett, supra.*) The definition of a delinquent child in the law of 1915 was taken literally from "An act relating to children who are now or may hereafter become dependent, neglected or delinquent, to·define these terms, and to provide for the treatment, control, maintenance, adoption and guardianship of the persons of such children." That act is the act commonly known as the Juvenile Court act, in force July 1, 1899, and it is based upon the right inherent in the State to take over the custody of the child when circumstances make it necessary for the welfare of the child and the State to do so, and upon the institution of any proceeding under that act the people become the real parties to the controversy. *People* v. *Piccolo,* 275 Ill. 453.

Webster's New International Dictionary gives as a definition for the verb "absent," "to take or withdraw [oneself] to such a distance as to prevent intercourse; to depart from." A definition of "depart" is, "to go further or away; to quit, leave or separate; to withdraw." "Separate" is defined "to part; to become disunited; to withdraw ·from one another, as: The family separated." "Quit" is defined "to be done with; to cease from; to depart from; to leave; to forsake." "Leave" is defined "to desert; abandon; forsake; to give up; to relinquish; to cease from." In defining the word "leave" the text says: "Leave is the more general term and signifies merely an act of departure. Quit implies a going without intention of return, or a final abandonment." It is to be noted that in each one of these definitions of and synonyms for the word "absent" there is more or less of an idea of finality, and so it may be taken as synonymous with the word "quit," and the words "absents itself from its home or place of abode" may be con-

strued as implying a going away from the home with the intention of not returning to it, or an abandonment of the home. It is a rule of construction of statutes that where two constructions may be placed upon a statute, and according to one of them the enactment would be absurd if not mischievous, while according to the other it would be reasonable and wholesome, the construction which would lead to an absurd result should be avoided. If, giving to the words of an act their literal or natural meaning, the conclusion registered would be unreasonable or absurd, some other meaning within the reasonable scope of the words may be adopted to avoid that result, as it appears that such other meaning may probably have been the one intended. (25 R. C. L. 1019.)

It is manifest that when the legislature in the act of 1915 adopted the definition of the term "delinquent child" from the Juvenile Court act, it intended that these words should be given the same meaning as they had in that act. The Juvenile Court act provides for proceedings for the adjudication of a child to be a delinquent child, and provides that if the court shall find any male child under the age of seventeen years or any female child under the age of eighteen years to be delinquent within the meaning of the act, the court may allow such child to remain at its own home subject to the friendly visitation of a probation officer, such child to report to the probation officer as often as may be required. It also contains provisions for the adoption of the child if the parents consent or are unfit, and provides that the court may commit such child to some training school for boys if a male child or to an industrial school for girls if a female child, or to some other school for delinquent children. It is to be noted that this act was not enacted to protect the virtue of female children but that it applies to boys as well as girls. The absenting of the child from its home, which renders the child delinquent, under neither of these statutes is necessarily for an immoral pur-

pose. All that is required by either statute to render the boy or girl delinquent is that it shall without just cause, and without the consent of its parents, guardian or custodian, absent itself from its home or place of abode. The term "absents itself from its home" means exactly the same in the case of a boy as it does in the case of a girl. "Encouraging" or "persuading," as the terms are used in the act of 1915, to constitute a crime mean exactly the same thing with reference to a boy that they do with reference to a girl. It could scarcely be contended that it was the intention of the legislature that a boy whose parents had set him to work weeding in the garden, who should without just cause and without the consent of his parents leave his work and go fishing or take an automobile ride, would thereby become a delinquent child, and that any person who persuaded or encouraged him to do so would thereby be guilty of a crime under the law of 1915 even though the boy remained away from home twenty-four hours, when there was no intention on the part of anyone that there should be a final leaving or abandonment of the boy's place of abode. To avoid these harsh and unreasonable consequences we must hold that the words "absents itself from its home or place of abode" mean something more than a mere temporary going away from such home with the intention of returning thereto within a short time. The evidence in this case shows that on the night in question when the parties left Decatur there was no intention on the part of any of the parties concerned that Lois Harris should abandon her home, but that it was the intention of all parties concerned that she should return to her home the next day. If plaintiffs in error encouraged or persuaded her to go on this trip they did not thereby persuade or encourage her to absent herself from her home, as that term is used in the law of 1915. In considering this case we can only consider the specific charge which is made against plaintiffs in error by the indictment in this case. We cannot consider

the question of their guilt or innocence upon any other charge which might have been brought against them.

The evidence in this case failing to show that either of plaintiffs in error was guilty of the specific crime alleged against him in the indictment, the judgments of the Appellate Court for the Third District and of the circuit court of Macon county are reversed.     *Judgment reversed.*

Mr. JUSTICE THOMPSON, dissenting.

---

(No. 17357.—Judgment affirmed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOE BOB BROWNING, Plaintiff in Error.

*Opinion filed June 16, 1926.*