THE PEOPLE OF THE STATE OF ILLINOIS *et al.*, Plaintiffs-Appellees, *v.* LARRY PRIEST, Defendant-Appellant.

(No. 56480;

First District—December 28, 1972.

500

Jonathan M. Hyman, of Northwestern Legal Assistance Clinic, of Chicago, (Patrick H. McIntyre, Senior Law Student, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (James Piper, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE EGAN delivered the opinion of the court:

The defendant was found guilty after a bench trial of unlawful possession of ammunition without a registration certificate and unlawful use of weapons. He was sentenced to one year in the State Farm at Vandalia on each finding, to run consecutively.

The defendant contends on appeal: the weapon found on his person was illegally seized; he never waived trial by jury; he was convicted of an offense for which he was not charged; the trial court improperly imposed consecutive sentences.

On the hearing on the motion to suppress Roy Martin testified that he was a police officer in uniform traveling in a squad car with Officers John O'Callaghan and Sergeant Karkhewzki. On January 11, 1971, at about 10:00 P.M. he was in the vicinity of 6104 South Stewart when he saw the defendant walking on the sidewalk with a companion. The squad pulled over and stopped a little behind them. Martin got out of the vehicle and one of the other officers called out to the defendant and his companion telling them to come over. All three officers were outside the vehicle. The defendant and his companion turned around and started to walk in the opposite direction away from the police. They started across a field and Martin walked toward them with Officer O'Callaghan.

After they got to within a few feet of the defendant, he turned around. Their duty was to patrol a high crime area which included the vicinity of 61st and Stewart. This was a robbery area. When they saw the men, they decided to make a field interrogation of them. When the defendant stopped the second time and turned around in the field, the officer could see very plainly the outline of a butt of a pistol which was tucked in his waistband underneath a white knit sweater. The defendant was wearing a jacket, but it was open in front. He saw something that looked like a butt of a gun protruding four inches upward from the center waistband and outward one and one-half inches from the body. The outline of the object was obvious because the sweater was tight fitting. At that time they ordered the defendant to remain standing still, placed him under arrest and confiscated the pistol.

John O'Callaghan testified when he first observed the two men they were walking northbound, but as the police turned they began to walk southbound away from them. The police asked the men to come over. He thinks it was Officer Martin who asked them. After Officer Martin told the two men to come over he observed a bulge which looked like the outline of a gun in the defendant's right inside belt pocket. The defendant's jacket was open and revealed a gun. At the time he saw the gun the defendant and his companion were about five or ten feet from the police vehicle. He doesn't recall which officer placed the defendant under arrest. He saw the bulge at the same time Martin told the defendant to stop.

The trial court denied the motion to suppress without making any findings of fact. Although the defendant refers to inconsistencies in the testimony of the police officers, he does not argue that because of those inconsistencies the trial court's determination on the motion to suppress should be overruled. He argues, rather, that the evidence as a matter of law taken in its best light does not support the trial court's conclusion. The defendant relies principally on *Terry v. Ohio*, 392 U.S. 1. In that case, a police officer observed two men and determined that they were acting in a suspicious manner. He identified himself as a police officer and asked for their names. When one of the men "mumbled something" in response to his question the police officer grabbed the defendant, and patted down the outside of his clothing. He felt a pistol in the coat pocket of the defendant. The conviction of carrying concealed weapons was affirmed.

The defendant's reliance on *Terry* is misplaced. In the *Terry* case the narrow question before the United States Supreme Court was: "whether it is always unreasonable for a policeman to seize a person and subject him to a limited search for weapons unless there is probable cause for

an arrest." (p. 15) The Supreme Court determined that the police officer "seized" the defendant and subjected him to a "search" when he took hold of him and patted down the outer surfaces of his clothing. It specifically equated "seizure" with "arrest." Under the particular facts of that case, the Supreme Court further held that the actions of the police officer in interfering with the defendant's personal security as he did were reasonable. In this case it is conceded that at the time the police officer first spoke to the defendant, he had no reasonable grounds for an arrest. So also when he first followed the defendant, he had no reasonable grounds for an arrest. When the defendant turned around and the police officers saw the outline of a pistol butt, however, the police officer had "reasonable grounds to believe that the [defendant was] committing or [had] committed an offense." Chapter 38, Section 107—2, Illinois Revised Statutes.

The keystone of the defendant's argument is the supposition that an unheeded request to stop succeeded by the police officer's following the defendant constituted a seizure (or arrest) within the meaning of *Terry v. Ohio*. This argument of the defendant has been answered by the *People v. Howlett* (1971), 1 Ill.App.3d 906, 911, 274 N.E.2d 885. In a factually similar setting, the court held that "the attempt to talk and the approach of the officers were neither arrests nor intrusions on the defendant's personal security." For these reasons we conclude that the trial court's denial of the motion to suppress was proper.

The defendant was charged under four separate complaints, two of which charged violations of City ordinances and are not pertinent here. One misdemeanor complaint alleged commission of "Unlawful Possession of Firearms or Ammunition in that he did possess" a .38 caliber revolver without a firearms identification card; the other misdemeanor complaint alleged the commission "of Unlawful Use of Weapons in that he knowingly carried * * * a revolver * * * fully loaded with five unspent .38 caliber cartridges."

While the complaint of possession alleged in general terms Unlawful Possession of Firearms *or* Ammunition, the specification refers to a revolver. (Chapter 38, Section 83—2, Illinois Revised Statutes.) The only specific charge referring to ammunition is contained in the complaint of Unlawful Use of Weapons under Chapter 38, Section 24—1(a) 4. This section of the code makes no reference to ammunition and, therefore, could not support a finding of guilty of Possession of Ammunition.

■■ One charged with a specific crime may not be found guilty of another even though the evidence might support such a finding. *Lowell v. People* (1907), 229 Ill. 227, 82 N.E. 226; *People v. Day* (1926), 321 Ill. 552, 152 N.E. 495.

██ The gravamen of the charge of possession under Section 83—2 is possession of a revolver and the finding of guilty of possession of ammunition constituted a fatal variance. The judgment of conviction of the offense of unlawful possession of ammunition is reversed.

The defendant further contends he did not waive a jury.

After the motion to suppress was denied, the record shows the following took place:

> "State's Attorney: You want to stipulate and admit into evidence and put the whole thing on again?
>
> Defense Attorney: No, I—
>
> State's Attorney: You going to rest on that or add some more testimony?
>
> Defense Attorney: I will stipulate that things would be the same. I will stipulate."

Then followed a stipulation that the revolver received in evidence was the revolver found on the defendant. After Officer Martin was recalled and testified, the court made a finding of guilty. In an oral motion for a new trial the defense counsel urged that he had not waived his client's right to a jury trial. This was the first and only reference to a jury trial in the record.

██ The duty rests on the trial judge to see that the election by a defendant to waive trial by jury is expressly and understandingly made. (*People v. Wesley* (1964), 30 Ill.2d 131, 195 N.E.2d 708.) In both cases cited by the State, *People v. Sailor* (1969), 43 Ill.2d 256, 253 N.E.2d 397, and *People v. Gay* (1972), 4 Ill.App.3d 652, 281 N.E.2d 738, the record showed that the attorneys representing the respective defendants expressly informed the court in the presence of the defendant that the jury was waived. In this case no such representation was made by the attorney representing the defendant.

██ We are not unmindful of the "overcrowded calls confronting the trial judges in the Municipal Department of the Circuit Court of Cook County." (See *People v. Gay* (1972), 4 Ill.App.3d 652, 655, 281 N.E.2d 738.) Nor are we unaware that "the defendant is no newcomer to criminal proceedings." (See *People v. Richardson* (1965), 32 Ill.2d 497, 500, 207 N.E.2d 453.) Nonetheless, we must conclude under these facts that the record fails to disclose that the defendant understandingly waived his right to a jury trial. *People v. Baker* (1969), 126 Ill.App.2d 1, 262 N.E.2d 7; *People v. Rambo* (1970), 123 Ill.App.2d 299, 260 N.E.2d 119.

For this reason the judgment of conviction of unlawful use of weapons is reversed and the cause remanded for new trial.

Judgment reversed in part; and reversed and remanded.

GOLDBERG, P. J., and BURKE, J., concur.