294 S.E.2d 287

**STATE of West Virginia**

v.

**Steven Lee BOSWELL.**

**No. 15099.**

Supreme Court of Appeals of West Virginia.

July 15, 1982.

Harshbarger, J., dissented and reserved right to file a dissenting opinion.

---

George W. Stokes, Asst. Atty. Gen., Charleston, for appellee.

H. John Rogers, New Martinsville, for appellant.

MILLER, Chief Justice:

We consider two issues in this criminal appeal: 1) whether the trial court was correct in refusing to suppress evidence seized by the police during a search of the defendant's vehicle incident to his arrest; and 2) whether the State's instruction number five, defining reasonable doubt, was erroneous and, if so, was it cured by other instructions.[1] We find that the trial court was correct in refusing to suppress evidence seized by the police; but we reverse the defendant's conviction and remand this case for a new trial on the basis of an erroneous State's instruction, which was the only instruction defining reasonable doubt.

The defendant, Steven Lee Boswell, was indicted in the Circuit Court of Wetzel County on the felony charge of possession with intent to deliver cocaine, a Schedule II controlled substance, in violation of W. Va. Code, 60A–4–401(a)(1)(i). The defendant was tried and found guilty of the lesser included misdemeanor charge of possession of cocaine.

On April 2, 1978, at approximately 2:00 a. m., the Chief of Police of the City of New Martinsville was on a routine patrol in the vicinity of the E & M Bar and the S and S Feed Store. He was accompanied by a former city policeman. The Chief testified that the police department had received numerous complaints about the E & M Bar, which was located across the street from the S and S Feed Store. Furthermore, the S and S Feed Store had been the object of a fire involving arson. For these reasons, the police patrolled the area frequently and were alert to any suspicious circumstances.

As the Police Chief drove by the bar and feed store, he observed a van parked about fifteen feet from the curb, down an alley, beside the feed store's parking lot. The light was on inside the van and two people were moving around. The Chief decided to investigate, and, as he approached the van, one of the people inside turned out the light and locked the doors. The Chief tapped on the window, and requested some identification. The defendant, Boswell, who was then in the driver's seat, turned on the inside light, and then got out of the van. While Boswell was getting his identification with the van's light still on, the Chief looked inside the van. On the top of the console, used as a cover for the engine, the Chief spotted in plain view a yellow pipe and a clear plastic bag containing what he believed to be marijuana. Both occupants of the van were placed under arrest and advised of their rights.

The Chief made a preliminary search of the van, including the passenger compartment in the back of the van, and a zippered pouch on the driver's seat's armrest. He found twelve aluminum packets containing suspected cocaine, more suspected marijuana, scales, two guns and three machetes. A warrant was later obtained from a magistrate to make a complete search of the van. In the later search, the police found six unidentified white pills, a pocket scale, aluminum foil and a spoon.

The defendant contends that all the evidence found by the Chief of Police during his preliminary search of the vehicle should have been suppressed because the search was conducted without a warrant. We disagree.

I.

THE FOURTH AMENDMENT ISSUE

The defendant's primary contention, with regard to the conduct of the police during the search of defendant's van, is that if the Police Chief had an opportunity to obtain a search warrant the following day to search the defendant's van, he should have waited

---

1. Other errors assigned by the defendant relating to other instructions and allegedly preju-
dicial remarks made by the prosecutor during his closing statement are not meritorious.

and conducted the entire search at that time. The defendant concedes, however, that a warrantless search of a motor vehicle can be made in certain circumstances. In support of the proposition that the mere involvement of a motor vehicle does not automatically negate the requirement of a search warrant unless there is a showing of "exigent circumstances," the defendant cites both *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), and *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The defendant contends that such "exigent circumstances" were absent in the present case.

The State, however, argues that the warrantless search of the defendant's van and the seizure of the contraband therein was constitutionally permissible as a search incident to a lawful custodial arrest, as recently delineated in the case of *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).

In *Belton*, the Supreme Court attempted to set out a "bright line" rule regarding the permissible scope of a contemporaneous search incident to a lawful arrest. The Court held that an officer, who has made a lawful custodial arrest of "recent" occupants of an automobile, may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile and examine the contents of any containers found within. In note 4 of *Belton*, the following statement was made:

"'Container' here denotes any object capable of holding another object. It thus includes closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing, and the like. Our holding encompasses only the interior of the passenger compartment of an automobile and does not encompass the trunk." 453 U.S. at 460, 101 S.Ct. at 2864, 69 L.Ed.2d at 775.

In *Belton*, a police officer stopped an automobile for speeding. In the course of checking the driver's identification, he smelled burnt marijuana and observed an envelope on the floor of the vehicle which he associated with marijuana. Upon placing the occupants of the car under arrest for the possession of marijuana, the policeman searched the passenger compartment of the car. In the zippered pocket of a black leather jacket located in the car, the policeman found cocaine.[2]

It must be emphasized that *Belton* was not predicated on the automobile exception first enunciated in *Carroll v. United States, supra.* *Belton* is related to the principle which we discussed in *State v. Moore*, 165 W.Va. 837, 272 S.E.2d 804 (1980), to the effect that a permissible warrantless search requires a lawful stop of the vehicle and the subsequently arising probable cause to believe that the vehicle is carrying contraband or evidence of the commission of a crime. Under *Belton*, this probable cause can justify the arrest of the occupant of the car and, as an incident to the lawful custodial arrest, the entire passenger compartment of the car can be searched—including containers located

**2.** In *Robbins v. California*, 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981), handed down the same day as *Belton*, the Court, in a plurality opinion, held that the warrantless opening of packages wrapped in opaque plastic discovered in the tailgate luggage compartment of a station wagon during the course of a warrantless search of the automobile was violative of the Fourth Amendment. In *Robbins*, the vehicle had been stopped because of its erratic course. The officer smelled marijuana and conducted a search of the passenger compartment, where he found marijuana. He then proceeded to search the station wagon's luggage compartment where he found the opaque plastic containers. Recently, *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (U.S. 1982), overruled *Robbins* to the extent that *Robbins* had precluded the search of plastic containers in the luggage compartment, based upon reasoning contained in *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), which had held that containers in an automobile had a separate expectation of privacy and do not fall within the automobile exception. *See State v. Tomey*, 163 W.Va. 578, 259 S.E.2d 16 (1979). *United States v. Ross* does not control our present case since the *Ross* search was based upon *prior* probable cause to believe the vehicle was carrying contraband. In effect, *Ross* defined the extent of a permissible search under the automobile exception first developed in *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

therein. *Belton* in effect extended the permissible area of a warrantless search to the entire passenger compartment. In both *Carroll* and *Moore* there was no custodial arrest prior to the initial search and both cases analyzed the warrantless search in regard to exigent circumstances furnished by the mobility of the automobile.[3]

■ *Belton*, however, does not provide the complete answer to the instant case, as its rule relates only to the search of a motor vehicle after the occupant has been placed under a lawful custodial arrest. *Belton's* principle serves only to justify the search of the motor vehicle *after* Boswell was arrested initially for possession of the marijuana seen on the console and seized by the arresting officer.

The preliminary question in this case is whether the activities of the Chief of Police, in tapping on the window and asking the defendant to identify himself, constituted an impermissible seizure. The Chief's conduct produced the defendant's reaction of opening the van door and exiting from the van. It was during this exodus that the Chief saw the marijuana in plain view on the console.

■ The United States Supreme Court has recognized that the Fourth Amendment seizure provision does apply to a detention or restraint on the movement of an individual by law enforcement officials even though such intrusions on the individual's privacy fall short of acts which traditionally constitute an arrest. *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Because stopping a person involves less intrusion on the individual's privacy, the seizure's validity is ordinarily tested by less severe standards than the probable cause standard that is necessary to effect an arrest.

In *Dunaway v. New York, supra*, the Supreme Court recognized that the genesis of this rule, involving a seizure of the person, was in *Terry v. Ohio, supra,*[4] and summarized the two changes made by *Terry*:

"Thus, *Terry* departed from traditional Fourth Amendment analysis in two respects. First, it defined a special category of Fourth Amendment 'seizures' so substantially less intrusive than arrests that the general rule requiring probable cause to make Fourth Amendment 'seizures' reasonable could be replaced by a balancing test. Second, the application of this balancing test led the Court to approve this narrowly defined less intru-

**3.** We summarized these search principles in *State v. Moore, supra* 165 W.Va. at 845, 272 L.Ed.2d at 810, as follows:

"The *Carroll* doctrine in its pure form requires that there be probable cause and exigent circumstances existing at the time the vehicle is stopped—thus providing the reason for stopping the vehicle and the subsequent search. However, a variation of the *Carroll* doctrine, recognized by the Supreme Court, provides that while an automobile cannot be arbitrarily stopped, it may be stopped for some legitimate state interest. Once the vehicle is lawfully stopped for a legitimate state interest, probable cause may arise to believe the vehicle is carrying weapons, contraband or evidence of the commission of a crime, and, at this point, if exigent circumstances are present, a warrantless search may be made."

Adding in note 8 of *Moore*:

"In this situation, the presence of exigent circumstances is ordinarily not a disputed is-

sue because the article's existence is generally not anticipated until the vehicle is stopped and the essential mobility of the vehicle provides the exigency."

**4.** *Dunaway v. New York* spoke of the pre-*Terry* rule in these terms:

"Before *Terry v. Ohio* ... the Fourth Amendment's guarantee against unreasonable seizures of persons was analyzed in terms of arrest, probable cause for arrest, and warrants based on such probable cause. The basic principles were relatively simple and straightforward: The term 'arrest' was synonymous with those seizures governed by the Fourth Amendment. While warrants were not required in all circumstances, the requirement of probable cause, as elaborated in numerous precedents, was treated as absolute." 442 U.S. at 207–08, 99 S.Ct. at 2254, 60 L.Ed.2d at 832–33. (Footnotes omitted)

sive seizure on grounds less rigorous than probable cause, but only for the purpose of a pat-down for weapons." 442 U.S. at 209–10, 99 S.Ct. at 2255, 60 L.Ed.2d at 834.

*Dunaway* involved a situation where a defendant was taken into custody by the police on less than a probable cause ground for his arrest. He was transported to the station house, given his *Miranda* warnings, and he subsequently confessed. The Court characterized his detention as an illegal seizure under the Fourth Amendment and suppressed his confession on the basis that there was no intervening event which broke the causal connection between the illegal detention and the confession.[5]

The Supreme Court has not articulated a precise test for what police actions may constitute a seizure where, in a situation as in the present case, a vehicle is already stopped and the officer asks for some identification. In *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), the vehicle had been lawfully stopped by the officer for a traffic violation. The driver was asked to step out of the car and produce his owner's card and driver's license. While he was in the process of disembarking, the officers noticed a large bulge under his jacket and conducted a pat-down search which revealed a revolver. The defendant was arrested for carrying a concealed weapon. Because the vehicle had been lawfully stopped, the critical inquiry was whether the officer's order to step out of the vehicle could be justified as reasonable. The Supreme Court did not discuss whether the order to step out of the vehicle was a seizure of the person. It

concluded that the seizure of the gun and the pat down were not unreasonable in light of the officer's interest in protecting himself against unobserved movements of a seated occupant who might attempt to assault him.

*Mimms* was a per curiam opinion with three of the Justices in dissent on the basis that the majority had diminished the *Terry v. Ohio* standard for justifying a "seizure" —that "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from these facts, reasonably warrant that intrusion." 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906.

Many state courts have adopted the view that there is some minimal level of police intrusion that will not constitute a "seizure" of the person. Unless this threshold is crossed, there is no need to consider the second question, which is whether the seizure was unreasonable under the circumstances. This point has been made in *Atchley v. State*, 393 So.2d 1034, 1043–44 (Ala. Cr.App.1981):

"Our review of the case law of other states on this point reveals that there are a number of decisions which have found that the actions of police officers in merely addressing questions and perhaps requesting identification of persons on the streets do not amount to 'stops' or seizures within the ambit of the Fourth Amendment." (Citations omitted)[6]

The court in *Atchley* relied on *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), for the

**5.** Previously, the Court had held in *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), that where there is an illegal arrest and subsequent confession, the confession, even though preceded by *Miranda* warnings, would not be admissible if there was no break in the nexus between the illegal arrest and the confession. *Dunaway*, therefore, applied the same principle to an illegal seizure or detention of the person which may not amount to an arrest. We have followed *Brown v. Illinois, supra*, in *State v. Moore, supra*, and *State v. Canby*, 162 W.Va. 666, 252 S.E.2d 164 (1979). We have also adopted the principles in *Dunaway v. New York, supra*, in *State v. Stanley*, 168 W.Va. 294, 284 S.E.2d 367 (1981).

**6.** *Atchley* cited these cases: *State v. Vohnoutka*, 292 N.W.2d 756 (Minn.1980); *State v. Johnson*, 414 A.2d 477 (R.I.1980); *People v. Privott*, 411 N.Y.S.2d 711, 66 App.Div.2d 951 (1978); *State v. Porter*, 31 Or.App. 229, 570 P.2d 111 (1977); *State v. Foster*, 269 S.C. 373, 237 S.E.2d 589 (1977); *People v. DeBour*, 40 N.Y.2d 210, 386 N.Y.S.2d 375, 352 N.E.2d 562 (1976); *People v. Rudasil*, 386 N.Y.S.2d 408, 53 App.Div.2d 541 (1976); *People v. Dembinski*, 62 Mich.App. 583, 233 N.W.2d 662 (1975); *State v. Tsukiyama*, 56 Haw. 8, 525 P.2d 1099 (1974); *People v. McGarry*, 10 Ill.App.3d 570, 294 N.E.2d 718 (1973); *People v. Priest*, 9 Ill.App.3d 499, 292 N.E.2d 518 (1972).

proposition that there is some minimal level of contact between a police officer and an individual which does not constitute a seizure, and concluded that the approach to and request for identification of a sleeping occupant of an automobile was not a seizure. However, the Supreme Court in *Mendenhall* could not agree on whether there had been an initial seizure. Only Justices Stewart and Rehnquist spoke on this point for the majority.[7] Justice Powell, joined by the Chief Justice and Justice Blackmun, concurred, and declined to address whether there had been an initial seizure since the point had not been raised in the lower courts. The dissenting Justices concluded that the initial stop was a "seizure" and that that seizure was illegal as not founded upon sufficient suspicion.[8]

We agree that not all encounters between law enforcement officials and members of the public must be characterized as seizures. Many activities unrelated to criminal investigations bring legitimate interplay between law enforcement officials and the public—such as traffic control, accident investigation, and health and rescue missions.[9] Such situations can be distinguished from those where the initial police encounter is directed at investigating criminal activity. In this latter area, we believe that the question of the initial seizure of the person cannot be resolved on the basis of a single factor, such as a reasonable person's belief that he was not free to leave.[10] To allow this belief to be the single controlling test would permit the police to randomly stop any person so long as they made it clear to him that he was free to leave. The random stopping of vehicles was condemned in *Delaware v. Prouse, supra,* and we can see no articulable difference when it comes to pedestrians.

■■■■ An initial police inquiry which calls into question a seizure of the person issue will ordinarily relate to some criminal investigation procedure and must originate from some suspicious circumstance involving the defendant. In determining the threshold question of whether the defendant has been seized, we look to the intensity of the initial inquiry. The less intense the initial inquiry the less likely that a seizure will be found. The intensity of the inquiry will determine whether the initial threshold of "seizure" has been crossed. This is because the intensity of the inquiry will govern when a reasonable person would believe that he was not free to leave

---

**7.** *Mendenhall* involved drug enforcement agents at an airport who conversed with a passenger who they claimed met the drug-courier profile. They had approached her while she was walking in a public concourse, identified themselves and asked to see her plane ticket and driver's license. She ultimately accompanied them to a room at the airport where she allegedly consented to a search of her person which revealed drugs. Justice Stewart's test for determining when there has been an impermissible initial seizure of the person is whether "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." 446 U.S. at 554, 100 S.Ct. at 1877, 64 L.Ed.2d at 509.

**8.** The matter becomes even more blurred with the later per curiam case of *Reid v. Georgia,* 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980), where, on facts rather similar to *Mendenhall,* a majority, including Justice Stewart, found the seizure to be illegal. Justice Rehnquist dissented based on the reasons stated by Justice Stewart in *Mendenhall.* Justice Powell joined by the Chief Justice and Justice Blackmun concurred but pointed out that the validity of the initial seizure had not been raised in the lower court and it could be addressed on the remand. The majority in *Reid* did not cite *Mendenhall* but relied on *Terry v. Ohio, supra,* and the lack of any reasonable suspicion that the defendant was engaged in criminal activity.

**9.** *Terry v. Ohio, supra,* spoke to this point:

"Street encounters between citizens and police officers are incredibly rich in diversity. They range from wholly friendly exchanges of pleasantries or mutually useful information to hostile confrontations of armed men involving arrests, or injuries, or loss of life. Moreover, hostile confrontations are not all of a piece. Some of them begin in a friendly enough manner, only to take a different turn upon the injection of some unexpected element into the conversation. Encounters are initiated by the police for a wide variety of purposes, some of which are wholly unrelated to a desire to prosecute for crime." 392 U.S. at 13, 88 S.Ct. at 1875–76, 20 L.Ed.2d at 901. (Footnote omitted)

**10.** This was the test proposed by Justice Stewart in *Mendenhall, supra. See* note 7, *supra.*

the initial police encounter.[11] If it is determined that a "seizure" of the person has occurred, the next question is whether such seizure was unreasonable. This second consideration, as required by *Terry v. Ohio, supra*, focuses upon the objective suspicious circumstances that warranted the officer's belief that criminal activity had or was occurring.[12]

The present case represents a minimal intrusion. The Chief of Police was aware of the nearby E & M bar's history of disorderly problems, and he was also aware that the feed store had been the subject of a fire involving arson. Of some relevance is the lateness of the hour as well as the conduct of the van's occupants: moving about inside and then turning off the lights as the Chief of Police approached.[13] These circumstances, although not pointing directly to any criminal activity, were at least sufficiently suspicious to enable the officer to walk over to the parked van, tap on the window and ask for identification.

The intensity of the officer's approach was also minimal, as he only asked for some identification and did not order the defendant out of the van. The fact that the defendant alighted from the van on his own volition cannot be charged as a part of the intensity of the officer's inquiry. It was this voluntary action which enabled the Chief of Police to view the interior of the van and to see the pipe and the clear plastic bag containing marijuana

in plain view on the van's console. We thus conclude that there was no initial seizure of the defendant.

It does not appear to be disputed that once it is found that the initial inquiry of the police officer was not an illegal seizure, the subsequent viewing of the marijuana permitted its seizure under the plain view doctrine, as summarized in Syllabus Point 7 of *State v. Moore*, 165 W.Va. 837, 272 S.E.2d 804 (1980):

> "A warrantless seizure of property in plain view is constitutionally permissible provided three requirements are met: '(1) the police must observe the evidence in plain sight without benefit of a search [without invading one's reasonable expectation of privacy], (2) the police must have a legal right to be where they are when they make the plain sight observation and, (3) the police must have probable cause to believe that the evidence seen constitutes contraband or fruits, instrumentalities or evidence of crime.' Syllabus Point 3, in part, *State v. Stone*, 165 W.Va. 266, 268 S.E.2d 50 (1980)."

Moreover, the observation of the marijuana in plain view gave rise to probable cause to arrest the defendant for possession of marijuana. The general rule with regard to the warrantless arrest of a person located elsewhere than in his own home has been stated in Syllabus Point 3 of

---

**11.** The term "intensity" is designed to cover a variety of fact patterns which surround the initial inquiry between the police and the individual. It embraces the degree of physical intrusion but also more subtle means of coercion or intrusion including the number of officers involved, their demeanor, their conduct and the length of questioning of the defendant.

**12.** *Terry* did not discuss the question of what circumstances would be sufficient merely to approach an individual for questions as to identity. Thus, it does not shed any light on the low end of the intensity scale which does not rise to the threshold of a "seizure." In *Terry*, a seizure occurred but it was found to be reasonable. *Terry* involved an experienced police officer who had the defendant and a companion under surveillance for some ten to twelve minutes. They were seen conferring, peering alternatively and surreptitiously into a store window, and

measuring distances, which led the officer to conclude that they were "casing" the store. He subsequently went up to them, identified himself and asked their names. When Terry mumbled something, the officer grabbed him, patted him down and found he was carrying a pistol. The Court found that the officer, before he initiated the stop of Terry, had specific facts on which to base his suspicions that criminal activity was contemplated and held the seizure to be appropriate.

**13.** We stated in Syllabus Point 5 of *State v. Moore*, 165 W.Va. 837, 272 S.E.2d 804 (1980):

> "A furtive gesture on the part of the occupant of a vehicle is ordinarily insufficient to constitute probable cause to search a vehicle if it is not coupled with other reliable causative facts to connect the gesture to the probable presence of contraband or incriminating evidence."

**442**

*State v. Duvernoy*, 156 W.Va. 578, 195 S.E.2d 631 (1973):

" 'Probable cause to make an arrest without a warrant exists when the facts and the circumstances within the knowledge of the arresting officers are sufficient to warrant a prudent man in believing that an offense has been committed.' Point 1 Syllabus, *State v. Plantz*, [155] W.Va. [24] [180 S.E.2d 614]."

*See also* Syllabus Point 7, *State v. Craft*, 165 W.Va. 741, 272 S.E.2d 46 (1980).

■ With a valid custodial arrest, the search of the remaining area of the passenger compartment of the van was authorized under *New York v. Belton, supra*, and the contraband so obtained was properly admitted into evidence.

## II.

## THE REASONABLE DOUBT INSTRUCTION

The defendant contends that State's Instruction No. 5,[14] is erroneous, as it rewrites the traditional instruction on reasonable doubt. Specifically, the defendant contends that the instruction's requirement, that a juror "who entertains such doubts should be able to give a good and substantial reason" for those doubts, prejudices the defendant. The State argues that even though State's Instruction No. 5 was the only instruction given which attempted to define reasonable doubt, the term "reasonable doubt" *per se* was used in all of the instructions save for State's Instruction No. 1. Therefore, the State argued, a consideration of the instructions as a whole and the evidence supporting a conviction

**14.** State's Instruction No. 5 reads:
"The Court instructs the jury that, although the burden is upon the State to prove the defendant guilty beyond a reasonable doubt, yet such doubt is not a mere vague, fanciful or imaginary doubt, but is a good and substantial doubt based upon the evidence or a lack of evidence in the case, and one for which he who entertains such doubts should be able to give a good and substantial reason based upon the evidence or lack of evidence in the case."

**15.** State's Instruction No. 10 given in *Keffer* reads:

for possession renders harmless any possible prejudice to the defendant.

■ We disagree and reverse the case on this point. State's Instruction No. 5 was the *only* instruction given which defined or attempted to define reasonable doubt. We stated in Syllabus Point 2 of *State v. Keffer*, 168 W.Va. 59, 281 S.E.2d 495 (1981), that:

"Where the State's instructions attempt to define reasonable doubt and such definitions are in substantial variance from customary reasonable doubt language so that the jury may well have convicted on a lesser standard of proof, such instructions will constitute reversible error."

In *Keffer*, the trial court gave three State instructions defining reasonable doubt. We held that these instructions, which varied from the customary reasonable doubt language, invited the jury to convict on a lesser standard of proof and therefore prejudiced the defendant. One of the State's instructions in *Keffer* of which we disapproved is almost identical to State's Instruction No. 5 in the present case.[15]

■ We have repeatedly discouraged the giving of instructions which attempt to define the reasonable doubt standard beyond the traditional formulation.[16] *State v. Keffer, supra; State v. Goff*, 166 W.Va. 47, 272 S.E.2d 457 (1980); *State v. Starr*, 158 W.Va. 905, 216 S.E.2d 242 (1975); *State v. Powers*, 91 W.Va. 737, 113 S.E. 912 (1922), *overruled on other grounds, State v. Petry*, 166 W.Va. 153, 273 S.E.2d 346 (1980). We reasoned in *State v. Starr, supra*, that

"The Court instructs the jury that a reasonable doubt such as is contemplated in law is not a mere fanciful or imagined doubt, but is a fair and substantial doubt based on the evidence or lack of evidence in the case and one for which a man *who entertains such doubt should be able to give a good and substantial reason arising from the evidence or a lack of evidence in the case.*" (Emphasis added)

**16.** In note 9 of *State v. Goff*, W.Va., 272 S.E.2d 457, 463 (1980), we offered a standard instruction on the presumption of innocence and burden of proof.

such instructions "confuse the jury as to the meaning of reasonable doubt and may by themselves be prejudicial to the defendant for the obvious reason that the jury is invited to convict on a lesser standard of proof." 158 W.Va. 912, 216 S.E.2d at 247. In *State v. Keffer, supra,* we stated that "[b]ecause the State's burden is 'beyond a reasonable doubt,' the existence of any reasonable doubt is sufficient to bar a conviction." 168 W.Va. 63, 281 S.E.2d at 497. Therefore, the vice in the present State's Instruction No. 5 is the same as in *Keffer's* State's Instruction No. 10: "[I]t is not necessary for a juror to be able to articulate a good and substantial reason for his or her doubt." *Id.* We note that in the present case only one instruction attempted to define reasonable doubt and it was erroneous. Had there been other instructions which properly defined the term "beyond a reasonable doubt," we may have held this language harmless.

For the foregoing reasons, the judgment of the Circuit Court of Wetzel County is reversed and the case is remanded for a new trial.

Reversed and Remanded.