THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ELMER CARTEE *et al.*, Defendants-Appellants.

Second District   No. 79-551

Opinion filed July 24, 1980.

---

Stephen E. Walter, of Walter & Smoker, of Waukegan, for appellants.

Dennis P. Ryan, State's Attorney, of Waukegan (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

This is an appeal from the judgment of the circuit court of Lake County denying the defendants' petition for post-conviction relief, following their conviction and sentencing for robbery.

The defendants were tried for robbery and convicted and sentenced to serve not less than 6 2/3 nor more than 20 years' imprisonment. They appealed but only one issue was raised on appeal—the propriety of their sentences being consecutive to the sentences already being served in the Iowa Penitentiary for a previous offense. The appeal was dismissed. The

defendants then filed a *pro se* petition for post-conviction relief on April 5, 1978, and amended petitions were filed on September 20, 1978. The State did not file a written response or other written motion for more than two months and the defendants, on November 29, 1978, filed a motion for an order of default (apparently meaning a motion for vacation of the conviction). The State was allowed to file its response on December 6, 1978. The defendants filed a motion asking that the trial court recuse itself from hearing the petition for post-conviction relief. The court denied the motion. The State then filed a motion to dismiss the post-conviction relief petitions, which was denied. An evidentiary hearing on the post-conviction petition was heard and the petition was denied. This appeal is from that order.

The conviction from which the defendants appeal was the result of the robbery of a tavern. The defendants had been convicted of separate murders and were incarcerated in the Iowa State Penitentiary when they met and made plans to meet again when they were paroled. Russell was paroled and went to visit his sister, Jeanette, in Libertyville. Cartee, who was in a minimum security dormitory because of good behavior, had expected to be paroled shortly. When he heard that he was not going to be paroled in the near future, he took off without leave and went with Russell to Russell's sister's house in Libertyville. While there they accompanied Jeanette to a local tavern where Jeanette was acquainted with the bartender. During the course of the evening, the tavern owner made some crude remarks to Jeanette which were resented by Cartee and Russell. Noticing that the tavern owner, Beitzel, was becoming intoxicated and that he had failed to close the cash register drawer after the last sale, Russell suggested to Jeanette that she flirt with Beitzel to divert his attention and he and Cartee would rifle the cash register. Jeanette testified that she opposed the scheme and warned Russell she would not help carry it out. At that time there were no other patrons in the bar. Soon afterwards, she testified, she told the others she was leaving and went outside to warm up the car. Very soon Cartee and Russell came out and Cartee was rubbing his hand. Jeanette said he told her he had hit Beitzel with a six-pack of beer they had been carrying out of the store because Beitzel had called him an obscene name. Cartee said he had hit Beitzel with the six-pack while Russell rifled the cash register. When they got home, they counted the money and it was about $400. Jeanette said the defendants offered her $100 of the money and she advised them to destroy any checks they had taken. She hid the $100 in her room. The defendants left the area a day or two later. Jeanette testified that the police called her the next day and asked her what she knew about the robbery of Beitzel's tavern. She told them she did not know anything about it but suggested that they had seen a couple of Mexicans enter the

tavern just as they were leaving. Afterwards, she testified, she got apprehensive about the situation and went to the police and told them what had actually happened and gave the police the $100 Russell had given her. The defendants were soon apprehended and returned to the Iowa State Penitentiary. Illinois police officers requested their return from Iowa for a trial on the charge of robbery of Beitzel. They did not attempt to extradite the defendants; instead, they arranged to interview them and then transport them to a downtown jail in Fort Dodge, Iowa. Instead of taking them back to the Iowa jail, however, the Illinois officers transported the defendants back to Lake County to stand trial.

At the trial, Jeanette testified for the State against her brother, Russell, and Cartee, telling the story related above. Defense counsel attempted to throw doubt on her story by implying that it was she who had actually stolen the money during the altercation between the defendants and Beitzel and that she had waited until the defendants left the area to tell the police that Cartee and Russell had robbed Beitzel, so as to clear herself. Beitzel's testimony was equivocal as he said he had his back turned when he was suddenly struck by something or somebody and knocked unconscious and that he did not regain consciousness immediately so he was not sure who had robbed him. The jury, not surprisingly, came to the conclusion that all three were guilty of the robbery and sent a note to the trial judge stating that they felt Cartee and Russell were guilty of robbery but that they felt that Jeanette had assisted in the robbery and wondered if she could be charged with anything. To that note the trial court returned the reply that only the defendants Cartee and Russell were on trial. He did not advise defense counsel of this communication at the time it occurred. Cartee and Russell were then convicted of robbery and sentenced to not less than 6 2/3 nor more than 20 years' imprisonment to run consecutive to the Iowa imprisonment.

Three issues are raised in this appeal: (1) Whether the trial court properly denied the defendants' motion for a "default"—apparently meaning a vacation of their conviction—due to the State's failure to file a written response to the defendants' petition for post-conviction relief within the 30-day period designated for such answer under section 122—5 of the Post-Conviction Hearing Act (Ill. Rev. Stat. 1977, ch. 38, par. 122—5); (2) Whether the trial court erred in denying the defendants' motion that the court recuse itself from hearing the post-conviction relief petition, and (3) Whether the court erred in its ruling that the defendants were not denied effective assistance of counsel (a) at the trial and (b) in the appeal.

As to the first issue, there was undoubtedly a considerable time lapse by the State in replying to the post-conviction petition. The statute (Ill. Rev. Stat. 1977, ch. 38, par. 122—5) reads as follows:

"Within 30 days after the filing and docketing of the petition, or within such further time as the court may set, the State shall answer or move to dismiss. In the event that a motion to dismiss is filed and denied, the State must file an answer within 20 days after such denial. No other or further pleadings shall be filed except as the court may order on its own motion or on that of either party. The court may in its discretion grant leave, at any stage of the proceeding prior to entry of judgment, to withdraw the petition. The court may in its discretion make such order as to amendment of the petition or any other pleading, or as to pleading over, or filing further pleadings, or extending the time of filing any pleading other than the original petition, as shall be appropriate, just and reasonable and as is generally provided in civil cases."

The amended post-conviction petition was filed on September 20, 1978. The filing of the State's answer was continued to October 25, at which time the State entered an oral denial. The trial court ordered the State to make a written response which again the State failed to do by the time required—November 25, 1978. Actually, the State's written answer was not filed until December 6, 1978, more than two months after the amended petition was filed. While the delay of the State to file a written answer to the petition was clearly a violation of the language of the statute, it is noted that no sanction is provided in the statute for failure by the State to make timely answer to the petition. The extreme penalty of vacating the conviction for failure to make timely answer seems inappropriate, although it is recognized that since the petition is filed with the objective of ending the defendant's incarceration in prison, the question of delay is a material consideration. It should be noted, however, that the trial court granted extensions of time for answering the petition and such continuances are within the court's discretion. In *People v. Farnsley* (1973), 53 Ill. 2d 537, the supreme court rejected the petitioner's contention that an answer to a post-conviction hearing filed beyond the statutory time limit should not be considered since the statute is mandatory in requiring an answer to be filed within 30 days. In rejecting that contention, the supreme court said:

"He [the petitioner] does not cite, nor do we find, any authority for the proposition that a valid disposition of a post-conviction petition will be reversed simply because the State may have delayed in filing its answer, especially, as here, where there is no indication that defendant was prejudiced by the delay." 53 Ill. 2d 536, 548-49.

■■ In the case before us we believe the continuances granted to the State were within the discretion of the trial court, since the statute is not couched in mandatory language. We do not condone the delay, since if

the petition has merit, the delay prolongs a questionable imprisonment; however, we will not take the extreme course of reversing a conviction because of such delay.

■■ As noted above the jury, at the end of its deliberation regarding the guilt or innocence of the defendants, sent a note to the judge stating its belief that Jeanette Geczy was also guilty, to which the judge responsed merely that "only the named defendants are on trial." Defense counsel was not present when this communication was received by the judge and answered, and he was not aware of the incident until sometime later. The defendants contend that the trial judge might possibly be called as a witness with regard to the jury communication and therefore should have recused himself from hearing the petition, citing *People v. Johnson* (1974), 24 Ill. App. 3d 737 (abstract). The syllabus of that case, which was an abstract case, does not indicate any similarity in facts to the case before us but, in any event, we think the defendants' argument is farfetched. It would not seem that the trial judge should be a potential witness except to verify facts which are already of record. We see no merit in the argument that the trial judge should have recused himself on the basis of the jury's communication. It is not contended that any prejudice resulted to the defendants from the incident.

■■ ■ Lastly, the defendants contend they were not adequately represented by counsel either at the trial or on appeal. The defendants cite the failure of defense counsel to raise the issue of proper procedure in extraditing the defendants from Iowa. Whether or not the procedure was extralegal, defense counsel made no issue of it prior to trial, but we cannot find this to be evidence of poor or inadequate representation. It appears that the established law in Illinois is that the irregularity of the extradition process or method by which a defendant is returned to the jurisdiction of Illinois is not material since it does not affect the question of a defendant's guilt or innocence and does not impair the jurisdiction of the court. (See *People v. Klinger* (1925), 319 Ill. 275; *People v. Pardo* (1970), 47 Ill. 2d 420.) Defense counsel's failure to raise this point was not *per se* evidence of incompetence. It is also contended by the defendants that defense counsel showed his incompetency when he neglected to exclude a potential witness from the courtroom after an order excluding witnesses had been issued, with the result that this witness was not allowed to testify for the defense. However, defense counsel testified that he had not intended to call this witness and was not aware that he had entered the courtroom. Moreover, the witness, Quilty, an investigator who interviewed the robbery victim, Beitzel, would only have testified that Beitzel was not sure at the time Quilty interviewed him whether he had been struck by someone just before he lost consciousness, preceding the robbery, or whether he simply lost consciousness as the result of falling

off a stool. (It will be recalled that there was evidence that Beitzel had been drinking for sometime prior to the robbery.) At the trial, however, Beitzel testified that he believed he was struck by one of the two defendants because of the nature of his injuries, that is, a cut eye, a broken jaw and a couple of broken ribs. He said that Cartee had been standing next to him and he had turned his back to the defendants while he was getting a six-pack and didn't see his assailant. Since the theory of the defense was not that Beitzel was not struck—it was admitted by defense counsel that Cartee had hit Beitzel—but rather to deny that the defendant had taken the money from the cash register, Beitzel's uncertainty as to what had happened was not important. The defense contended it was Jeanette who had robbed the cash register drawer and the strategy of the defense was to admit that an unpremeditated quarrel had occurred between Cartee and Beitzel during which Cartee struck Beitzel, knocking him unconscious while Jeanette had taken advantage of the incident by emptying the cash register and leaving the tavern. Thus it was contended that Cartee and Russell were not involved in the robbery or theft. That being the theory, Quilty's testimony would have been of little help to the defense, since it would only have indicated the victim was uncertain about something which the defense admitted—the assault on Beitzel by Cartee. Whether defense counsel, Boyd, was careless in failing to exclude Quilty, thus disqualifying him as a witness, does not seem to be a significant point since in any event Quilty's testimony could not have materially assisted the theory of the defense that the defendants were guilty of a battery but not of a robbery.

Another aspect of defense counsel's alleged incompetency is that he failed to bring out Jeanette Geczy's previous relationship with Beitzel, from whom she allegedly had previously taken money. Defense counsel explained he feared an attempt to imply anything improper between Jeanette and Beitzel might backfire and in any event it would be inconsistent to imply an intimate relationship between Beitzel and Jeanette and at the same time to assert the theory that Jeanette had opened the cash register and run out of the tavern with Beitzel's money while he was lying unconscious on the floor. The failure to cross-examine Jeanette on this point does not necessarily imply carelessness—it may have been a reasonable weighing of alternatives. As was said by our supreme court in *People v. Goerger* (1972), 52 Ill. 2d 403, 409:

"In order to establish lack of competent representation at trial, it is necessary to demonstrate 'actual incompetence of counsel, as reflected by the manner of carrying out his duties as a trial attorney' which results in substantial prejudice without which the outcome would probably have been different. [Citations.]"

In this case, it is not clear that either the exclusion of Quilty or the

failure to cross-examine Jeanette as to her relationship with Beitzel prejudiced the defendants—as it turned out, the jury took a dim view of Jeanette's part in the robbery in any event, but this does not help the defendants. The decision not to call a witness is an exercise of judgment and is not usually regarded as evidence of incompetency even though hindsight may indicate it was an unwise decision. See *People v. Murphy* (1978), 72 Ill. 2d 421, and cases cited therein.

■ Defense counsel also neglected to file a motion for a new trial or argue such a motion orally, thus limiting the issues on review to such points as might be considered "plain error." However, defense counsel pointed out that he did not consider that there was any basis for a new trial and he did not wish to make a frivolous motion. This does not reflect incompetency unless the record manifestly indicates that there were substantial issues which could have been raised. The record before us does not so indicate.

It is also contended that defense counsel failed to consult adequately with the defendants prior to the sentencing hearing with the result that no evidence was adduced in their behalf in mitigation of their sentences. Here again, however, defense counsel stated that the omission was deliberate because after reading the presentence reports the defendants had no corrections or additions to make and elected to stand on their record as outlined therein. Defense counsel concurred in this decision, he explained, because he did not think the material in the reports was helpful on the issue of mitigation.

■ Defendants allege that appellate counsel also was incompetent in that he failed to raise on appeal several issues which they called to his attention in correspondence from the penitentiary. Mr. Nolte, appellate counsel, testified, however, that the matters they referred to in the correspondence from prison were not matters of record and therefore he could not make them issues on appeal. The defendants contend an issue occurred at the trial which was grounds for granting a new trial which they called to the attention of both trial and appellate counsel, but appellate counsel did not appeal on that issue. The incident in question involved a violation of an order granted by the trial court precluding reference during the trial to the fact that the defendants were incarcerated in the Iowa State Penitentiary from which one was on parole and the other AWOL at the time of the robbery. It was alleged by the defendants that during closing argument the court reporter stopped recording the prosecutor's argument and stepped away from her machine before the prosecutor's argument was finished. While she was not recording the argument the prosecutor stated to the jury that the defendants were convicts in the Iowa penitentiary at the time of the trial. This is not a matter of record, however, and therefore cannot be considered on appeal. Trial counsel

had no recollection of any such incident, and the transcription of the closing argument of the State's Attorney does not indicate any breaking-off point in the recording. In any event, since there is no record of this incident and no mention was made of it by either the defense counsel or the trial court at the time it occurred, it cannot be raised here as an issue. Appellate counsel testified that in his opinion the only appealable issue was whether or not the defendants' sentences should have been consecutive and that was the only issue he raised on appeal because the issues referred to by the defendants were either waived or were without merit or were not matters of record. Since the defense presented no witnesses it was difficult to contend that the defendants were not guilty beyond a reasonable doubt, nor were there any evidentiary rulings which had been preserved for review nor any rulings which were plain error. For that reason, appellate counsel said, only one issue was raised—the propriety of the consecutive sentences, which was decided adversely to the defendants on appeal. It appears that appellate counsel was not remis under these circumstances in raising only this one issue.

Defendants argue that appellate counsel was incompetent in not raising the issue of inadequate representation by trial counsel, but as we view the record of the trial there were reasons for the things done or not done by trial counsel which indicated an exercise of judgment rather than sheer incompetency, and we see no manifest incompetency on trial counsel's part, hence no incompetency on appellate counsel's part in not raising this question as to trial counsel. It is obvious that appellate counsel was constricted by the trial record before him, and his rejection of frivolous issues does not indicate incompetency; rather, it emphasizes the inherent difficulties of the case.

The judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

SEIDENFELD, P. J., and NASH, J., concur.