No. 2--05--0443          Filed 2/22/07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Stephenson County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 03--CF--178 |
| ROGER J. HOEKSTRA, | ) ) ) | Honorable Charles R. Hartman, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE GROMETER delivered the opinion of the court:

Defendant, Roger J. Hoekstra, filed a pro se postconviction petition (see 725 ILCS 5/122--1 et seq. (West 2004)) in the circuit court of Stephenson County, alleging that his attorney rendered ineffective assistance at trial. Defendant had previously entered a guilty plea to a charge of burglary (720 ILCS 5/19--1 (West 2004)) and was sentenced to 12 years' imprisonment. Defendant also asserts that the mittimus should be amended. The circuit court found that the petition did not state the gist of a meritorious claim and dismissed it. Defendant now appeals, and, for the reasons that follow, we affirm.

This case arose from a burglary that occurred at Mr. Ed's tavern in Winslow, Illinois. The establishment's owner, Ed Metz, awoke when he heard a noise coming from his bar, which is adjacent to his residence. He entered the bar and observed defendant flee through the back door. Metz went to the back door and saw defendant enter a van. The van departed to the north. He called

the sheriff's department, and a deputy was dispatched at about 3:52 a.m. At 4:02 a.m., a van was stopped by Green County deputies, who took defendant into custody. In addition to defendant, another individual was in the van. Green County is in Wisconsin. Stephenson County deputies took custody of defendant and transported him to Mr. Ed's. Metz identified defendant. Additional facts will be presented below as they pertain to the issues defendant raises.

Defendant claims that trial counsel was ineffective for two related reasons. First, he argues that trial counsel should have filed a motion to quash his arrest and suppress evidence because no reasonable suspicion existed to justify a Terry stop at the time he was first detained. Second, he asserts that trial counsel erred in failing to file a motion to quash and suppress based on the facts that Illinois deputies took him into custody in Wisconsin and transported him back to Illinois. Regarding the latter point, defendant claims that the Illinois deputies lacked authority to act in Wisconsin and that extradition procedures should have been followed.

This case comes to us following the summary dismissal of a postconviction petition, so review is de novo. People v. Simms, 192 Ill. 2d 348, 360 (2000). Following the filing of a postconviction petition, a trial court may, within 90 days, dismiss it if it is frivolous or patently without merit. People v. Jones, 211 Ill. 2d 140, 144 (2004). To survive dismissal at this stage, the petition need present only the gist of a constitutional claim. People v. Gaultney,174 Ill. 2d 410, 418 (1996). This is a low standard, and a petitioner need present only a limited amount of detail and need not support the claim with legal argument or citation to authority. People v. Edwards, 197 Ill. 2d 239, 244 (2001). All well-pleaded factual allegations contained in the petition are to be taken as true. People v. Williams, 364 Ill. App. 3d 1017, 1022 (2006). The Post-Conviction Hearing Act (725 ILCS 5/122--1 et seq. (West 2004)) provides a remedy for substantial violations of a

defendant's rights under either the state or the federal constitution. People v. Leason, 352 Ill. App. 3d 450, 453 (2004).

Since both of defendant's claims allege the ineffective assistance of counsel, the standards set forth in Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), apply. People v. Albanese, 104 Ill. 2d 504, 526-27 (1984). To succeed on such a claim, a defendant must show both that his counsel's performance "fell below an objective standard of reasonableness" (Strickland, 466 U.S. at 688, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064) and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. To satisfy the first portion of the Strickland test, a defendant must show that his attorney's performance fell below an objective standard as measured by prevailing professional norms. People v. Spann, 332 Ill. App. 3d 425, 430 (2002). There is a strong presumption, which a defendant must overcome, that counsel's performance "falls within the wide range of reasonable professional assistance." People v. Miller, 346 Ill. App. 3d 972, 982 (2004). Decisions involving judgment, strategy, or trial tactics will not support a claim of ineffective assistance. People v. Lindsey, 324 Ill. App. 3d 193, 197 (2001). Regarding the prejudice portion of the analysis, a defendant, following a guilty plea, need demonstrate only a reasonable probability that, but for counsel's errors, he or she would have refrained from entering a guilty plea and insisted on proceeding to trial. Miller, 346 Ill. App. 3d at 982.

We will first address defendant's claim that trial counsel should have filed a motion to quash and suppress based on the lack of reasonable suspicion to conduct a Terry stop. Under Terry v. Ohio, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), and its progeny, a police officer may

briefly detain an individual to investigate potential criminal conduct if he or she has a reasonable and articulable suspicion that criminal activity is afoot. People v. Hubbard, 341 Ill. App. 3d 911, 915 (2003). In determining whether a detention was warranted, a court must consider the totality of the circumstances, viewed from a commonsense perspective. Hubbard, 341 Ill. App. 3d at 915. A reasonable suspicion is more than a hunch, but it is less than probable cause and far less than proof by a preponderance of the evidence. United States v. Sokolow, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10, 109 S. Ct. 1581, 1585 (1989). The analysis is objective, requiring the court to assess whether "the facts available to the officer at the moment of the [stop would] ' "warrant a man of reasonable caution in the belief" that the action taken was appropriate.' [Citation]." People v. Moss, 217 Ill. 2d 511, 529 (2005).

Two additional principles guide our inquiry. First, the collective knowledge of all of the officers involved in the apprehension of defendant may be considered in determining whether a reasonable suspicion existed. See People v. Fox, 155 Ill. App. 3d 256, 263 (1987) ("Where officers are working together, the knowledge of each is the knowledge of all, and the arresting officer has the right to rely on the knowledge of the officer giving the command together with his own personal knowledge. [Citations.] Probable cause for an arrest may be established on the basis of all the information by the officers working in concert [citations], and, even if such knowledge is not told to the arresting officer, it may be considered by the trial court in determining whether there was probable cause so long as such information was somehow placed in the record [citation]"). Second, any actions defendant took prior to the time he submitted to the authority of the police officers who initially stopped him may also be considered in determining whether the police had a reasonable suspicion of criminal activity to justify the stop. People v. Brodack, 296 Ill. App. 3d 71, 75 (1998)

("In other words, absent physical force, a police show of authority in activating lights and siren does not amount to a stop until the defendant submits to the show of authority").

Defendant relies on one allegation in arguing that his counsel rendered ineffective assistance at trial in this regard. Defendant points out that Richard Roodhouse, a Stephenson County deputy, testified that Metz stated that the person he chased from his tavern got into a blue van. The van defendant was in was actually green. If this were the only relevant fact, we would likely agree with defendant. However, the record reveals other facts that the police could have relied on in stopping defendant. The stop occurred shortly after the burglary and about nine miles away from Mr. Ed's. That a defendant is stopped in the vicinity of a crime shortly after it occurred has been held to be indicative of a reasonable suspicion that the defendant had committed the crime. People v. Hubbard, 341 Ill. App. 3d 911, 915 (2003). While many cases that rely upon this factor in support of a finding of reasonable suspicion involve distances of much less than nine miles, in People v. Mascarenas, 666 P.2d 101, 108 (Colo. 1983), the Supreme Court of Colorado found that a reasonable suspicion existed where the defendant was found 17 miles from a crime scene. Indeed, one Illinois case found that, despite the passage of four hours, the fact that the defendant was located five miles from the scene of a crime was a factor in finding that probable cause existed to arrest the defendant. People v. Williamson, 319 Ill. App. 3d 891, 898 (2001).

Moreover, we note that defendant was stopped at about 4 a.m. in an area that is not populous. We take judicial notice that the population of Stephenson County is under 50,000 and the population of Green County is about 35,000. DiModica v. Department of Employment Security, 164 Ill. App. 3d 445, 448 (1987) (court may judicially notice population). That the van was stopped in the middle of the night in an area that was not very populous indicates that there were likely not many other

similar vehicles in the vicinity.  Cf. People v. Dyer, 141 Ill. App. 3d 326, 331 (1986) (rural setting and absence of other vehicles in area contributed to officer's reasonable suspicion); People v. Waln, 120 Ill. App. 3d 73, 77 (1983) (despite absence of description of vehicles, officer justified in stopping the only two cars he observed in the area).  Additionally, Metz stated that the van departed in a northerly direction.  Defendant was apprehended in Wisconsin, which is north of Illinois.  That the van was observed moving in the direction it was reported to be heading further strengthens the basis that the Green County deputies had for stopping it.  People v. Bujdud, 177 Ill. App. 3d 396, 402 (1988) (considering fact that officer observed vehicle coming from direction of crime as contributing to basis for Terry stop); People v. Jackson, 145 Ill. App. 3d 789, 793 (1986) ("In addition, [the police officer's] first sighting of the van coincided in time, distance and direction with the information from the radio messages").

Defendant's behavior immediately preceding the seizure also contributed to a reasonable suspicion that he had committed a crime.  As we noted previously, all information prior to the time a defendant submits to the authority of a police officer may be considered in determining whether a reasonable suspicion exists.  Brodack, 296 Ill. App. 3d at 75; Village of Gurnee v. Gross, 174 Ill. App. 3d 66, 70 (1988) ("We conclude, however, that the reckless driving complaint to the police department, Officer Agos' observation of defendant's car, which matched the description, license number and general location of the car in corroboration of the complaint, coupled with defendant's lack of response to the officer's request to pull his car over, were sufficient to permit an investigatory stop" (emphasis added)).  As the Green County deputies were attempting to stop it, a jacket and a pair of gloves were thrown from the van.  That the occupants of the van were discarding clothing leads to a strong inference that they were trying to conceal something, namely their identities, if they

feared that the clothing could be identified, or the clothing itself, if it was stolen. We can conceive of no innocent reason to be discarding such items from a moving vehicle. Parenthetically, we note that littering is an offense in Wisconsin (Wis. Stat. Ann. §287.81 (West 2002)), which would have provided an independent basis for a seizure. See City of Milwaukee v. Nelson, 149 Wis. 2d 434, 458, 439 N.W.2d 562, 571 (1989).

Finally, we do not find persuasive defendant's argument that Metz's description of the van as blue, as opposed to green, would have invalidated the stop. Quite simply, it was night, and, in the dark, both green and blue may be viewed as dark colors. The District of Columbia Court of Appeals has aptly observed that "a mistake regarding an item's color when 'observations occurred in the early hours of the morning under artificial lighting conditions' would not be deemed fatal where points of similarity exist." Umanzor v. United States, 803 A.2d 983, 996 (D.C. App. 2002), quoting Brown v. United States, 590 A.2d 1008, 1019 (D.C. App. 1991). In fact, a North Carolina court found that a witness's description of a car as blue or green was a factor that supported a conviction. State v. Carroll, 85 N.C. App. 696, 701, 355 S.E.2d 844, 847 (1987). Contrary to defendant's argument, we believe that Metz's description of the van as blue, though it was actually green, was yet another factor that made it reasonable for the Green County deputies to effect a stop.

In sum, on this issue, defendant has not set forth the gist of a constitutional claim that his counsel was ineffective. The failure to file a motion that would have been futile does not constitute ineffectiveness. People v. Wilson, 164 Ill. 2d 436, 454 (1994). More importantly, the decision regarding whether to file a motion is typically a matter of trial strategy and is entitled to great deference. Wilson, 164 Ill. 2d at 454-55. That the stop of defendant was not challenged based on the discrepancy between the description Metz gave and the actual color of the van is simply

inadequate to establish that trial counsel's performance fell below an objective standard of reasonableness. Accordingly, we reject defendant's argument on this point.

Defendant also contends that trial counsel was ineffective for failing to file a motion to quash and suppress based on the fact that Illinois law enforcement personnel entered Wisconsin, took defendant into custody, and transported him back to Illinois. Defendant essentially makes two complaints. First, he contends that the deputies from Illinois lacked the authority to take custody of him in Wisconsin. Second, he asserts that he was illegally transported across the state line. We find both arguments ill-taken.

We reject defendant's proposition that Illinois police lacked the authority to take him into custody in Wisconsin. The trial court, in dismissing defendant's postconviction petition, relied on State v. Slawek, 114 Wis. 2d 332, 338 N.W.2d 120 (Wis. App. 1983), a case that recognized the ability of a law enforcement officer in Illinois to make a citizens arrest in Wisconsin. Defendant distinguishes Slawek by pointing out that it involved the actual witnessing of a crime and the subsequent arrest by Illinois officers, while the instant case involves only taking custody of defendant after an arrest had already been made by law enforcement personnel from Wisconsin. We agree with defendant that Slawek is not directly on point. However, we also note that defendant cites nothing to suggest that an Illinois police officer could not enter Wisconsin, take custody of a subject, and return him to Illinois. Since defendant cites nothing in support of the proposition that an Illinois law enforcement officer lacks the authority to enter another state and bring a suspect back to Illinois,[1]

---

[1]Defendant does cite section 107--4 of the Code of Criminal Procedure of 1963 (725 ILCS 5/107--4 (West 2002)), which concerns the authority of law enforcement officers of this state to make arrests in other jurisdictions of this state as well as the authority of law enforcement officers

this argument is waived. People v. Acevedo, 191 Ill. App. 3d 364, 365 (1989). In any event, it appears meritless in light of Slawek.

Defendant also argues that his rights were violated when he was returned to Illinois across the state line. He cites the Uniform Criminal Extradition Act (Act) (725 ILCS 225/1 et seq. (West 2002)) to this effect. In essence, then, defendant's complaint is that he was moved from Wisconsin to Illinois without proper extradition procedures being followed. It has, however, been held that the failure of defense counsel to raise irregularities in the extradition process is not per se evidence of incompetence. People v. Cartee, 86 Ill. App. 3d 895, 900 (1980); see also People v. Simmons, 67 Ill. App. 3d 1045, 1054-55 (1978).

Moreover, it is well established that the fact that a fugitive is returned to the state by improper means does not impair the jurisdiction of the court to try the fugitive. People v. Pardo, 47 Ill. 2d 420, 423 (1970); People v. Klinger, 319 Ill. 275, 279 (1925); Cartee, 86 Ill. App. 3d at 900. Thus, it is not enough for defendant simply to point to the manner in which he was returned to Illinois. That alone provides no basis for undoing his conviction. Defendant, however, argues not that the trial court lacked jurisdiction over him; rather, he asserts that the failure to comply with proper extradition procedures could have formed the basis for a motion to quash his arrest and suppress evidence flowing therefrom and that trial counsel was ineffective for failing to file such a motion.

The problem with defendant's argument, however, is that the extradition clause of the federal constitution creates no individual rights. The clause itself states:

---

of other states to conduct arrests within Illinois. As this case involves an Illinois officer taking custody of a suspect in a foreign state, section 107--4 is not on point. This citation is the only authority defendant provides in support of this portion of his argument.

"A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime." U.S. Const., art. IV, §2, cl. 2.

Thus, it does not purport "to confer any right on the fugitive." Barton v. Norrod, 106 F.3d 1289, 1297 (6th Cir. 1997). Instead, " 'the extradition clause is a procedural provision which does not conflict with or affect any provision of the constitution or its amendments protecting the rights of individuals.' " People ex rel. Hogan v. Ogilvie, 35 Ill. 2d 95, 97 (1966), quoting People ex rel. Gilbert v. Babb, 415 Ill. 349, 357 (1953). The clause confers rights and duties upon states rather than individuals. See Klinger, 319 Ill. at 278 ("The right of the Governor of the asylum State to decline to honor a demand for extradition is a right of the State, and is in nowise based on the personal right of the fugitive, and where no objection is made by the court or authorities who have jurisdiction over the fugitive, he has no right to object to the exercise of jurisdiction over him by the court of another State. When the requisition has been honored and the fugitive surrendered thereunder, such surrender will operate as a waiver of jurisdiction of the asylum State"); see also People v. Boswell, 148 Ill. App. 3d 915, 917 (1986) ("[E]xtradition of fugitives from justice is an absolute right of the demanding State"). In fact, a state may, if it so chooses, "provide for the surrender of fugitives on terms less exacting than those imposed by Federal law." People ex rel. Dimas v. Shimp, 83 Ill. App. 3d 150, 154 (1980).

Similarly, defendant's citation to the Act (725 ILCS 225/1 et seq. (West 2002)) is of no avail. Defendant makes only a general citation to the Act and does not explain how a violation of the Act

would warrant the remedy of quashing and suppression. We are aware of no case law that would support defendant's position, and defendant does not call our attention to any.

Since the extradition clause provides defendant with no rights, and since the Act does not provide such a remedy, it is difficult to see how an irregularity in the extradition process could provide a basis for the suppression of evidence.[2] Any attempt by trial counsel to secure the suppression of evidence by invoking that clause would have necessarily failed. As such, trial counsel's failure to file a motion on this basis cannot be deemed ineffective assistance of counsel.

Finally, we address defendant's contention that the mittimus needs to be amended and clarified. He asserts that since he was convicted of a Class 2 felony, even though he was sentenced as a Class X offender, he is required to serve only two years' supervised release. See 730 ILCS 5/5--8--1(d) (West 2002). The State agrees that defendant need complete only two years' supervised release. The Department of Corrections (DOC) website, however, shows that defendant is scheduled to complete three years' supervised release. Defendant asks that the mittimus be amended to clearly state that he was convicted of a Class 2 felony and need serve only two years' supervised release. The State contends that this is not necessary, for the mittimus clearly states that defendant was convicted of a Class 2 felony, and the error was made not by the court system but by the DOC. We agree with the State; the mittimus is clear. Defendant should therefore raise this error with the DOC rather than with us.

_____

[2]Analogously, the suppression of evidence under the fourth amendment may be accomplished only by an individual whose rights have been violated. People v. Taylor, 245 Ill. App. 3d 602, 609 (1993). In this instance, there is simply no right upon which defendant can base his claim that counsel should have filed a motion to quash arrest and suppress evidence.

-11-

In light of the foregoing, we affirm the judgment of the circuit court of Stephenson County dismissing defendant's postconviction petition. Neither of the issues he advances sets forth the gist of a claim of ineffective assistance of counsel.

Affirmed.

HUTCHINSON and CALLUM, JJ., concur.