# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## September 2015 Term

**FILED**
**November 6, 2015**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 14-0174

**STATE OF WEST VIRGINIA,**
**Plaintiff Below, Respondent**

**V.**

**JAMES EARL NOEL, JR.,**
**Defendant Below, Petitioner**

---

**Appeal from the Circuit Court of Mercer County**
**Honorable Omar J. Aboulhosn, Judge**
**Criminal Action No. 13-F-330-OA**

**REVERSED AND REMANDED**

---

Submitted: September 23, 2015
Filed:  November 6, 2015

David L. White
Charleston, West Virginia
Attorney for the Petitioner

Patrick Morrisey
Attorney General
Elbert Lin
Solicitor General
Gilbert Dickey
Assistant Attorney General
Julie A. Warren
Assistant Attorney General
Charleston, West Virginia
Attorneys for the Respondent

**JUSTICE DAVIS delivered the Opinion of the Court.**

**JUSTICES BENJAMIN AND KETCHUM concur and reserve the right to file concurring opinions.**

**JUSTICE LOUGHRY dissents and reserves the right to file a dissenting opinion.**

**SYLLABUS BY THE COURT**

1.     "Police officers may stop a vehicle to investigate if they have an articulable reasonable suspicion that the vehicle is subject to seizure or a person in the vehicle has committed, is committing, or is about to commit a crime."  Syllabus point 1, in part, *State v. Stuart*, 192 W. Va. 428, 452 S.E.2d 886 (1994).

2.     Pursuant to *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), police may conduct a warrantless search of a vehicle incident to a recent occupant's arrest only if (1) the arrestee is unsecured and within reaching distance of the vehicle's passenger compartment at the time of the search or (2) it is reasonable to believe that the vehicle contains evidence of the offense of arrest.  If these justifications are absent, a warrantless search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies.

3.     "'An automobile may be stopped for some legitimate state interest. Once the vehicle is lawfully stopped for a legitimate state interest, probable cause may arise to believe the vehicle is carrying weapons, contraband or evidence of the commission of a crime, and, at this point, if exigent circumstances are present, a warrantless search may be made.'  Syllabus point 4, *State v. Moore*, 165 W. Va. 837, 272 S.E.2d 804 (1980)[, *overruled on other*

i

*grounds by State v. Julius*, 185 W. Va. 422, 408 S.E.2d 1 (1991)]." Syllabus point 2, *State v. Flint*, 171 W. Va. 676, 301 S.E.2d 765 (1983).

4.     "'A furtive gesture on the part of the occupant of a vehicle is ordinarily insufficient to constitute probable cause to search a vehicle if it is not coupled with other reliable causative facts to connect the gesture to the probable presence of contraband or incriminating evidence.'  Syllabus point 5, *State v. Moore*, 165 W. Va. 837, 272 S.E.2d 804 (1980)[, *overruled on other grounds by State v. Julius*, 185 W. Va. 422, 408 S.E.2d 1 (1991)]."  Syllabus point 3, *State v. Flint*, 171 W. Va. 676, 301 S.E.2d 765 (1983).

**Davis, Justice:**

The petitioner herein and defendant below, James Earl Noel, Jr. ("Mr. Noel"), appeals from a sentencing order entered January 30, 2014, by the Circuit Court of Mercer County. By that order, as corrected by its March 18, 2014, amended sentencing order,[1] the circuit court upheld Mr. Noel's jury convictions and sentenced him therefor as follows: one to five years for his conviction of fleeing in a vehicle;[2] one to fifteen years for his conviction of possession with intent to deliver a schedule II controlled substance (cocaine);[3] and one to five years for his conviction of possession with intent to deliver a schedule II controlled substance (methamphetamine),[4] said sentences to run consecutively. On appeal to this Court, Mr. Noel raises two assignments of error: (1) the circuit court erred by not suppressing evidence discovered by the arresting officer at the time of the subject traffic stop and (2) the circuit court erred by allowing Mr. Noel's attorney to answer as to whether Mr. Noel intended to testify at his trial in violation of *State v. Neuman*, 179 W. Va. 580, 371 S.E.2d 77 (1988).[5]

---

[1]On March 18, 2014, the circuit court entered an amended sentencing order which corrected the erroneous sentences set forth in its January 30, 2014, sentencing order to accurately reflect the sentences imposed during the court's January 16, 2014, sentencing hearing.

[2]*See* W. Va. Code § 61-5-17(f) (2012) (Supp. 2013). For further treatment of this provision, see Section III.A., *infra*.

[3]*See* W. Va. Code § 60A-4-401 (2011) (Repl. Vol. 2014).

[4]*Id.*

[5]The parties also have submitted supplemental briefs in this case regarding the
(continued...)

1

Upon a review of the parties' arguments, the record designated for appellate consideration, and the pertinent authorities, we conclude that the search of Mr. Noel's car was unlawful and that the circuit court erred by not suppressing the evidence found during that search. Accordingly, we reverse Mr. Noel's convictions and resultant sentences and remand this case for a new trial.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On August 23, 2013, Mr. Noel was driving through the streets of downtown Bluefield, West Virginia, when Bluefield Police Officer K.L. Adams ("Officer Adams"), who was patrolling those streets in a police car, pulled out behind him. Mr. Noel then turned onto a side street, and Officer Adams continued his patrol route. Shortly thereafter, Mr. Noel exited a side street in front of Officer Adams' cruiser, whereupon Officer Adams noticed that Mr. Noel's vehicle had a large, horizontal crack in the windshield, which spanned from one side of the windshield to the other and had additional cracks radiating vertically from the main crack. Believing the windshield cracks posed a safety hazard, Officer Adams activated his

---

[5](...continued)
recent United States Supreme Court case of *Heien v. North Carolina*, ___ U.S. ___, 135 S. Ct. 530, 190 L. Ed. 2d 475 (2014). Because the arresting officer neither charged nor arrested Mr. Noel with a violation of a vehicle safety statute, we do not find this case to be instructive to our resolution of the instant appeal. *See infra* Section III.

cruiser's lights to effectuate a stop of Mr. Noel's vehicle.[6]  Rather than stopping his vehicle, however, Mr. Noel drove away at a high rate of speed, reaching speeds of eighty to ninety miles per hour, through residential and campus streets of Bluefield.  Upon reaching a particular residence, Mr. Noel stopped his vehicle in front of the house, exited his vehicle, and attempted to flee on foot; shortly thereafter, Officer Adams apprehended him.

Upon returning Mr. Noel to the location where Mr. Noel's vehicle and Officer Adams' police cruiser were parked, Officer Adams asked Mr. Noel for his driver's license; Mr. Noel stated that he did not have a driver's license, but produced an identification card issued by the State of Ohio.  Investigating further, Officer Adams learned that Mr. Noel's driver's license had been suspended due to numerous violations.  Mr. Noel additionally claimed that he had traveled to that particular house to visit its resident, but the woman living there said that, while she knew who Mr. Noel was, she did not know why he would be visiting her.  While Officer Adams engaged in this conversation with the home's occupant, Mr. Noel again attempted to flee on foot.

Eventually, Officer Adams placed Mr. Noel in handcuffs.  At this point in time, Mr. Noel was standing next to the driver's side door of his vehicle, and the driver's side door

---

[6]*See* W. Va. Code § 17C-16-2(a) (1951) (Repl. Vol. 2013).  For the relevant statutory language, see *infra* Section III.A.

was open. Officer Adams later testified that Mr. Noel repeatedly glanced inside his vehicle and at the vehicle's center console. Apparently fearing that Mr. Noel either might have a weapon on his person or in his vehicle that he was attempting to access, Officer Adams searched under the vehicle's driver's seat and in the vehicle's center console, where he discovered crack cocaine and methamphetamine. At trial, Officer Adams explained that Mr. Noel's lack of a valid driver's license and his repeated attempts to flee, coupled with his knowledge that persons in custody have been known to escape police handcuffs and retrieve a weapon, led him to search the vehicle. After placing Mr. Noel under arrest for fleeing but before transporting him to the police station for processing, Officer Adams conducted an inventory of Mr. Noel's car in preparation for its impoundment; during the inventory process, Officer Adams also discovered straws used to crush and inhale drugs and latex gloves. On the way to the police station, Mr. Noel allegedly asked Officer Adams, "Who ratted me out? How did you know to pull me over?" The State did not reveal this dialogue to Mr. Noel or his attorney until right before his criminal trial was scheduled to begin. As a result of this delayed disclosure, the trial court prohibited the State from using this statement in its case-in-chief, but allowed it to be used for purposes of impeachment on cross-examination.

Mr. Noel was indicted by a Mercer County grand jury on charges of fleeing in a vehicle, possession with intent to deliver a schedule II controlled substance (cocaine), and possession with intent to deliver a schedule II controlled substance (methamphetamine). Prior

to trial, Mr. Noel moved to suppress the evidence Officer Adams discovered upon searching his vehicle, arguing that no probable cause existed for either the traffic stop or the subsequent vehicle search. The trial court denied Mr. Noel's motion and allowed the drug evidence to be admitted at trial. At the commencement of his jury trial on December 26, 2013, the trial court informed Mr. Noel of his right to testify and his right to remain silent, and that the jury would be instructed accordingly; Mr. Noel answered in the affirmative when the trial court asked if he had understood this explanation of his rights. Thereafter, at the beginning of Mr. Noel's case-in-chief, the trial court asked whether Mr. Noel intended to testify, to which his attorney replied in the negative. Upon the conclusion of the trial, the jury convicted Mr. Noel of fleeing in a vehicle and possession with the intent to distribute cocaine and methamphetamine. During the ensuing sentencing hearing, the trial court sentenced Mr. Noel to one to five years for his conviction of fleeing in a vehicle, one to fifteen years for his conviction of possession with intent to deliver a schedule II controlled substance (cocaine), and one to five years for his conviction of possession with intent to deliver a schedule II controlled substance (methamphetamine), which sentences were memorialized by the court's January 30, 2014, sentencing order and its March 18, 2014, amended sentencing order.[7] From these convictions and corresponding sentences, Mr. Noel appeals to this Court.

---

[7]*See supra* note 1.

## II.

### STANDARD OF REVIEW

In the case *sub judice*, Mr. Noel asserts two alleged errors. Because this Court's review of each of these issues is governed by a different standard, we will set forth the applicable standard of review in our discussion of each issue.

## III.

### DISCUSSION

On appeal to this Court, Mr. Noel raises two assignments of error: (1) the circuit court erred by refusing to suppress the evidence that Officer Adams obtained from his search of Mr. Noel's car and (2) the circuit court violated Mr. Noel's rights under *State v. Neuman*, 179 W. Va. 580, 371 S.E.2d 77 (1988), by allowing Mr. Noel's attorney to answer whether Mr. Noel intended to testify in his own defense at trial. We will address each of these assigned errors in turn.

### A. *Motion to Suppress Search Evidence*

Mr. Noel first argues that the circuit court erred by denying his motion to suppress evidence discovered during Officer Adams' search of Mr. Noel's vehicle. After Officer Adams handcuffed Mr. Noel, who was standing at the open, driver's side door of his car, Officer Adams searched the interior of the vehicle because, he explained, he was afraid

Mr. Noel had a weapon that he would be able to retrieve. During this search, Officer Adams discovered evidence that led to Mr. Noel's arrest and conviction for the two drug charges in the case *sub judice*. Mr. Noel contends that the search and resultant evidence was improper because Officer Adams did not have probable cause to effectuate a traffic stop of his vehicle.

The State responds that the West Virginia vehicle safety statutes provided Officer Adams with sufficient probable cause to stop Mr. Noel's vehicle to inspect its cracked windshield, and, after Mr. Noel fled upon the activation of Officer Adams' patrol car lights, additional probable cause existed to stop Mr. Noel for fleeing. The State further contends that Officer Adams conducted a permissible search of Mr. Noel's vehicle incident to a valid traffic stop, and, therefore, the circuit court correctly refused to suppress the evidence discovered during this search.

Before reaching the merits of this assignment of error, we first must consider the manner in which we review the denial of a motion to suppress. We previously have enunciated this standard as follows:

> The standard of review of a circuit court's ruling on a motion to suppress is now well defined in this State. *See State v. Farley,* 192 W. Va. 247, 452 S.E.2d 50 (1994) (discussing at length the standard of review in a suppression determination). By employing a two-tier standard, we first review a circuit court's findings of fact when ruling on a motion to suppress evidence under the clearly erroneous standard. Second, we review *de novo* questions of law and the circuit court's ultimate

7

conclusion as to the constitutionality of the law enforcement action. Under the clearly erroneous standard, a circuit court's decision ordinarily will be affirmed unless it is unsupported by substantial evidence; based on an erroneous interpretation of applicable law; or, in light of the entire record, this Court is left with a firm and definite conviction that a mistake has been made. *See State v. Stuart,* 192 W. Va. 428[, 433], 452 S.E.2d 886, 891 (1994). When we review the denial of a motion to suppress, we consider the evidence in the light most favorable to the prosecution.

*State v. Lilly*, 194 W. Va. 595, 600, 461 S.E.2d 101, 106 (1995) (footnotes omitted).

Turning to Mr. Noel's contentions, we disagree that Officer Adams did not have sufficient cause[8] to effectuate a traffic stop as a result of the severely broken windshield in Mr. Noel's vehicle. Pursuant to W. Va. Code § 17C-16-2(a) (1951) (Repl. Vol. 2013),

[t]he department of public safety may at any time upon reasonable cause to believe that a vehicle is unsafe or not equipped as required by law, or that its equipment is not in proper adjustment or repair, require the driver of such vehicle to stop and submit such vehicle to an inspection and such test with reference thereto as may be appropriate.

Insofar as a vehicle cannot be driven "in such unsafe condition as to endanger any person," W. Va. Code § 17C-15-1(a) (1951) (Repl. Vol. 2013), it is clear that Officer Adams had

[8]We note that both Mr. Noel and the State have indicated that Officer Adams was required to have *probable* cause in order to stop Mr. Noel's vehicle. This, however, is not the correct standard. Rather, the governing vehicle safety statute requires only "reasonable cause," W. Va. Code § 17C-16-2(a), and our established case law requires only "an articulable reasonable suspicion," Syl. pt. 1, in part, *State v. Stuart*, 192 W. Va. 428, 452 S.E.2d 886 (1994), to stop a vehicle.

"reasonable cause," W. Va. Code § 17C-16-2(a), to stop Mr. Noel's vehicle to inspect its windshield to determine whether such impairment was of a nature as to obstruct the driver's vision and render the vehicle unsafe.

However, an independent justification also exists to provide a basis for the traffic stop. Upon his activation of his patrol car's lights, Officer Adams observed Mr. Noel drive away from him, through the streets and college campus of downtown Bluefield, reaching speeds of eighty to ninety miles per hour. Such actions on Mr. Noel's part constituted the crime of fleeing with reckless indifference and provided independent justification for the subject traffic stop. *See State v. Flint*, 171 W. Va. 676, 681, 301 S.E.2d 765, 770 (1983) (observing that there exists "a legitimate state interest in . . . the safety of the public [so as to] necessitate . . . the stopping of the erratically driven vehicle"). We previously have held that "[p]olice officers may stop a vehicle to investigate if they have an articulable reasonable suspicion that the vehicle is subject to seizure or a person in the vehicle has committed, is committing, or is about to commit a crime." Syl. pt. 1, in part, *State v. Stuart*, 192 W. Va. 428, 452 S.E.2d 886 (1994). Specifically, the crime of fleeing involving reckless indifference, with which Mr. Noel was charged and ultimately convicted, is defined as follows:

> A person who intentionally flees or attempts to flee in a vehicle from a law-enforcement officer . . . acting in his or her official capacity after the officer has given a clear visual or audible signal directing the person to stop, and who operates the

9

vehicle in a manner showing a reckless indifference to the safety of others, is guilty of a felony and, upon conviction thereof, shall be fined not less than $1,000 nor more than $2,000 and shall be imprisoned in a state correctional facility not less than one nor more than five years.

W. Va. Code § 61-5-17(f) (2012) (Supp. 2013).[9]  Having determined that sufficient cause existed to effectuate the traffic stop, we next must determine whether the ensuing search was permissible.

Whether Officer Adams' search of Mr. Noel's vehicle was proper depends upon the facts and circumstances surrounding the traffic stop, itself.  As the United States Supreme Court explained in *Michigan v. Long*, 463 U.S. 1032, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983),

> [o]ur past cases indicate . . . that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect.  These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which,

---

[9]In the case *sub judice*, we will apply the version of W. Va. Code § 61-5-17(f) (2012) (Supp. 2013) that was in effect at the time Mr. Noel committed the offense of fleeing in 2013.  While this statute twice has been amended since that date, those changes do not alter the definition of or the penalty for fleeing with reckless indifference set forth in subsection (f). *See* W. Va. Code § 61-5-17(f) (2015) (Supp. 2015); W. Va. Code § 61-5-17(f) (2014) (Repl. Vol. 2014).

10

taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. *See Terry*[ *v. Ohio*], 392 U.S.[ 1], at 21, 88 S. Ct.[ 1868], at 1880[, 20 L. Ed. 2d 889 (1968)]. "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.,* at 27, 88 S. Ct., at 1883. If a suspect is "dangerous," he is no less dangerous simply because he is not arrested. If, while conducting a legitimate *Terry* search of the interior of the automobile, the officer should . . . discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances.

463 U.S. at 1049-50, 103 S. Ct. at 3480-81, 77 L. Ed. 2d 1201 (footnote and additional citations omitted).

More recently, the Court revisited the question of when a vehicle search incident to a driver's arrest is proper and reasonable under the circumstances in *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009). In *Gant*, the Tucson Police Department was investigating a residence believed to be involved in the sale of drugs; Mr. Gant answered the door and informed the officers that the home's owner would be home later that evening. Following this encounter, the police conducted a records check and learned that Mr. Gant's driver's license had been suspended and that he had an outstanding warrant for his arrest for driving on a suspended license. Upon returning to the residence later that evening to continue their drug investigation, the officers saw Mr. Gant also returning to the residence while driving a car. Once Mr. Gant parked his car, the police called his name and immediately

11

arrested and handcuffed him. After placing Mr. Gant in the back of a patrol car, the officers searched his car, where they found a gun and a bag of cocaine. During his ensuing criminal trial for possession of a narcotic drug for sale and possession of drug paraphernalia, Mr. Gant moved to suppress the evidence discovered in his car claiming that the search of his vehicle was unlawful. The trial court permitted the evidence to be admitted, but the Arizona Supreme Court determined the search to be unreasonable. *Id.*, 556 U.S. at 335-38, 129 S. Ct. 1714-16, 173 L. Ed. 2d 485.

In considering the parties' arguments, the Court recognized the existence of confusion regarding the scope of the exception to the Fourth Amendment's search warrant requirement in cases involving a vehicle search incident to an arrest. Thus, the United States Supreme Court revisited the issue, clarifying the parameters of such a search by holding as follows:

> [P]olice [are authorized] to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search. . . .
>
> [W]e also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle."

*Id.*, 556 U.S. at 343, 129 S. Ct. at 1719, 173 L. Ed. 2d 485 (footnote omitted) (quoting

*Thornton v. United States*, 541 U.S. 615, 632, 124 S. Ct. 2127, 2137, 158 L. Ed. 2d 905

12

(2004) (Scalia, J., concurring)).  With respect to the first reason for authorizing such a search, *i.e.*, an arrestee who is unsecured and within reaching distance of the vehicle's passenger compartment, the Court observed that

> [b]ecause officers have many means of ensuring the safe arrest of vehicle occupants, it will be the rare case in which an officer is unable to fully effectuate an arrest so that a real possibility of access to the arrestee's vehicle remains.  But in such a case a search incident to arrest is reasonable under the Fourth Amendment.

*Gant*, 556 U.S. at 343 n.4, 129 S. Ct. at 1719 n.4, 173 L. Ed. 2d 485 (citation omitted).  As to the second justification for such a search, *i.e.*, to retrieve evidence relevant to the crime for which the arrestee has been arrested, the Court noted that,

> [i]n many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence.  But in others, . . . , the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein.

*Gant*, 556 U.S. at 343-44, 129 S. Ct. at 1719, 173 L. Ed. 2d 485 (citations omitted).  Thus, the precedent established by *Gant* is clear, and we now hold that, pursuant to *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), police may conduct a warrantless search of a vehicle incident to a recent occupant's arrest only if (1) the arrestee is unsecured and within reaching distance of the vehicle's passenger compartment at the time of the search or (2) it is reasonable to believe that the vehicle contains evidence of the offense of arrest.  If these justifications are absent, a warrantless search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant

13

requirement applies.

Similarly, this Court considers the circumstances justifying a search of a vehicle incident to a traffic stop to be quite narrow:

> "An automobile may be stopped for some legitimate state interest. Once the vehicle is lawfully stopped for a legitimate state interest, *probable cause may arise* to believe the vehicle is carrying weapons, contraband or evidence of the commission of a crime, *and, at this point, if exigent circumstances are present*, a warrantless search may be made." Syllabus point 4, *State v. Moore*, 165 W. Va. 837, 272 S.E.2d 804 (1980)[(emphasis added), *overruled on other grounds by State v. Julius*, 185 W. Va. 422, 408 S.E.2d 1 (1991)].

Syl. pt. 2, *State v. Flint*, 171 W. Va. 676, 301 S.E.2d 765 (emphasis added). Furthermore,

> "[a] furtive gesture on the part of the occupant of a vehicle is ordinarily insufficient to constitute probable cause to search a vehicle if it is not coupled with other reliable causative facts to connect the gesture to the probable presence of contraband or incriminating evidence." Syllabus point 5, *State v. Moore*, 165 W. Va. 837, 272 S.E.2d 804 (1980)[, *overruled on other grounds by State v. Julius*, 185 W. Va. 422, 408 S.E.2d 1 (1991)].

Syl. pt. 3, *State v. Flint*, 171 W. Va. 676, 301 S.E.2d 765.

Applying these holdings to the case *sub judice*, we conclude that Officer Adams' search of Mr. Noel's car without a warrant was not lawful under either the Supreme Court's opinion in *Gant* or this Court's prior jurisprudence. To render the subject search lawful under *Gant*, either (1) Mr. Noel had to be unsecured and within reaching distance of

14

the passenger compartment of his car or (2) it was reasonable to believe that Mr. Noel's

vehicle contained evidence of the crime for which he was arrested, *i.e.*, fleeing with reckless

indifference.  From the circumstances that led to the instant appeal, it is clear that Mr. Noel

was neither unsecured nor within reaching distance of the interior of his vehicle searched by

Officer Adams.  The record demonstrates that Officer Adams secured Mr. Noel by placing

him in handcuffs *before* he searched Mr. Noel's vehicle.[10]  Moreover, at the time Officer

---

[10]Other courts considering whether an arrestee who is handcuffed, but who remains near his/her vehicle at the time of the warrantless search, rather than being placed in the officer's patrol car, is secured also have concluded that the arrestee has been secured as contemplated by *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009).  *See Canino v. State*, 314 Ga. App. 633, 725 S.E.2d 782 (2012) (driver charged with reckless driving was handcuffed and standing next to open driver's door of vehicle during warrantless search; *Gant* requirements found not satisfied because driver was secured, not within reaching distance of car, and car would not have contained evidence of reckless driving).  *See also Commonwealth v. Perkins*, 465 Mass. 600, 989 N.E.2d 854 (2013) (vehicle search without warrant found unlawful where driver was secured by handcuffs, was standing near car but could not access it, and evidence of arrest for traffic violation not likely to be found in car); *State v. VanNess*, 186 Wash. App. 148, 344 P.3d 713 (2015) (warrantless search of arrestee's backpack not proper where arrestee was handcuffed and standing at rear of vehicle, but could not access backpack placed on vehicle's trunk and arrest was made for outstanding warrants).  *Cf. United States v. McCraney*, 674 F.3d 614 (6th Cir. 2012) (warrantless vehicle search not proper because unhandcuffed driver was standing near trunk of car, was not within reaching distance of vehicle's passenger compartment, and it was unreasonable to believe evidence of traffic violation would be found inside vehicle).  *But see United States v. Sellers*, 897 F. Supp. 2d 754 (N.D. Ind. 2012) (warrantless vehicle search proper where driver was standing at trunk of car, was not handcuffed, had informed police he had a weapon, and was subject of ongoing drug investigation); *Robinson v. State*, 407 S.C. 169, 754 S.E.2d 862 (2014) (search of vehicle without warrant proper where driver was handcuffed and standing at rear of vehicle, but police had seen handgun inside the vehicle when the occupants exited the car and driver and occupants were wanted in connection with armed robbery); *State v. Snead*, 326 Ga. App. 345, 756 S.E.2d 581 (2014) (warrantless search of vehicle proper to secure scene where unhandcuffed driver was outside of vehicle, but

(continued...)

15

Adams searched the vehicle's closed console, Mr. Noel was not in reaching distance of the passenger compartment of his car. *See Gant*, 556 U.S. at 343 n.4, 129 S. Ct. at 1719 n.4, 173 L. Ed. 2d 485 ("Because officers have many means of ensuring the safe arrest of vehicle occupants, it will be the rare case in which an officer is unable to fully effectuate an arrest so that a real possibility of access to the arrestee's vehicle remains." (citation omitted)). Finally, it was unreasonable to believe that Mr. Noel's vehicle contained evidence of the offense of his arrest, *i.e.*, fleeing with reckless indifference. Therefore, Officer Adams' warrantless search of Mr. Noel's vehicle incident to his arrest for fleeing was unlawful under *Gant*, and the circuit court should have suppressed the evidence found during this search.

Furthermore, Officer Adams' warrantless search of Mr. Noel's vehicle was not lawful under this Court's prior holdings in *Flint*. Under Syllabus point 2 of *Flint*, a vehicle search without a warrant is proper only if probable cause exists that the vehicle contains a weapon, contraband, or evidence of the commission of a crime and exigent circumstances exist. 171 W. Va. 676, 301 S.E.2d 765. In the case *sub judice*, Officer Adams originally initiated the traffic stop to check the safety of Mr. Noel's vehicle and then effectuated the stop based upon Mr. Noel's flight. Officer Adams had no probable cause to believe that Mr. Noel's vehicle contained either a weapon or contraband, and evidence of the crime of arrest,

[10](...continued)
police had seen driver holding firearm inside car).

16

*i.e.*, fleeing with reckless indifference, would not have been found in the vehicle; neither were exigent circumstances present. Moreover, much of Officer Adams' justification for the warrantless vehicle search was based upon Mr. Noel's repeated glances towards the interior of his car and, specifically, its center console. As we held in Syllabus point 3 of *Flint*, such furtive gestures, without the presence of contraband or evidence of criminal activity, is not sufficient justification for a warrantless vehicle search. *Id.*

Accordingly, we find that the subject warrantless vehicle search was not lawful and that the circuit court erred by refusing to suppress the evidence resulting therefrom.[11] Therefore, we reverse Mr. Noel's convictions and resultant sentences and remand this case for a new trial.[12]

---

[11]Although Mr. Noel has not addressed this issue, the State alternatively contends that Officer Adams' search of Mr. Noel's vehicle was proper as an inventory search. We disagree. The State has not demonstrated that Officer Adams saw any item of value in Mr. Noel's vehicle that would have justified an inventory search. *See* Syl. pt. 2, *State v. Goff*, 166 W. Va. 47, 272 S.E.2d 457 (1980) ("An inventory search is not proper when there is no showing that the police saw any items of personal property in the interior of the vehicle, which would warrant the initiation of an inventory search.").

[12]Having concluded that the circuit court improperly admitted evidence that was used to convict Mr. Noel and that he is entitled to a new trial in which such evidence is suppressed, we need not consider his second assignment of error regarding the propriety of the *Neuman* colloquy conducted by the circuit court. However, during the retrial of this case, the circuit court should ensure that it complies with the protections afforded by *Neuman*. *See* Syl. pt. 7, *State v. Neuman*, 179 W. Va. 580, 371 S.E.2d 77 (1988) ("A trial court exercising appropriate judicial concern for the constitutional right to testify should seek to assure that a defendant's waiver is voluntary, knowing, and intelligent by advising the defendant outside the presence of the jury that he has a right to testify, that if he wants to testify then no one can
(continued...)

## IV.

## CONCLUSION

For the foregoing reasons, the circuit court's January 30, 2014, sentencing order, as corrected by its March 18, 2014, amended sentencing order, is hereby reversed, and this case is remanded for a new trial.

Reversed and Remanded.

---

[12](...continued)

prevent him from doing so, that if he testifies the prosecution will be allowed to cross-examine him. In connection with the privilege against self-incrimination, the defendant should also be advised that he has a right not to testify and that if he does not testify then the jury can be instructed about that right.").